[No. 24314.    Department Two.    May 12, 1933.]

EUGENE SNODDERLY, *a minor, by J. J. Snodderly, his guardian ad litem, Respondent,* v. FRANK BROTHERTON, *Appellant.*[1]

*W. G. Coleman,* for appellant.

*C. A. McCabe,* for respondent.

STEINERT, J.—This is an action in replevin, brought on behalf of a minor, by his guardian, against the defendant to recover possession of a truck formerly owned by the minor and traded in by him as part of the purchase price of a new automobile; damages for detention of the truck are also sought in the complaint. The original transaction between the parties was evi-

[1]Reported in 21 P. (2d) 1036.

denced by a conditional sale contract which the minor subsequently elected to disaffirm, preparatory to the bringing of this action. The cause was tried before the court, without a jury, resulting in findings of fact and conclusions of law favorable to the minor, followed by a judgment, from which defendant appeals.

The facts material to the consideration of the questions here involved are these: Appellant, Frank Brotherton, was at all times herein mentioned an automobile dealer at Walla Walla, Washington. Arthur D. Stradley, individually, conducted a mechanical and auto-trading business at Pomeroy, and in connection therewith was engaged in selling DeVaux automobiles for appellant on commission. Eugene Snodderly, who will hereinafter be referred to as respondent, was, on December 22, 1931, a minor, being then a few weeks over twenty years of age. For about five years previous to that time, respondent had been earning his own living by doing farm work and operating a truck which he had previously purchased. His earnings were retained by himself and used by him as he saw fit. He kept a bank account, on which he drew his personal checks. At one time, he had bought a Chevrolet car, but in the transaction his brothers had signed the necessary papers, on account of respondent's infancy. The Chevrolet car was later traded in on a truck, and again the brothers signed the papers.

A few years before, one Charles Snodderly, an uncle of the respondent, had died, leaving an estate to his nephews and nieces. From this estate, respondent was entitled to receive about four hundred dollars on reaching his majority, which was to occur on November 8, 1932. Mr. Stradley had known the respondent all his life and, in fact, was well acquainted with the various members of the family to which respondent belonged. He had had many dealings of a business nature with

88

the respondent prior to the one here in question. He also knew that respondent would share in his uncle's estate.

On December 22, 1931, Stradley, as the agent of Brotherton, sold a new DeVaux automobile, on conditional sale contract, to respondent and one Ed Wise, an adult. By the terms of the contract, respondent's truck was taken in as a first payment of three hundred dollars; the balance was payable in monthly installments commencing April 1, 1932; the next to the last payment was to be in the sum of four hundred dollars payable November 1, 1932, which was just about the time that respondent was to receive his share of his uncle's estate; it was contemplated that this payment would come from that source. Wise paid nothing on the contract, but agreed to give a mortgage, as collateral to the conditional sale contract, on an estate in which he was personally interested. The mortgage, which was actually executed a few days subsequent to the conditional sale contract, ran to Stradley and was in the sum of $1,080, which covered the purchase price of the new car, together with interest and insurance. It was understood that out of this sum, when paid, respondent was to receive three hundred and fifty dollars and the balance was to be applied on the purchase price of the car.

The appellant, Brotherton, was not present while the sale of the car was being negotiated, the deal being handled between Stradley, his agent, and the two young men, respondent and Wise. Upon completion of the preliminary negotiations, the conditional sale contract was signed by Brotherton as dealer and seller.

After purchasing the new DeVaux car, respondent and Wise used it jointly, as a pleasure conveyance, for about two months. Wise then disappeared, leaving the car with respondent; Wise has not been heard from

since. Respondent continued to use the car until March 4, 1932, when he notified appellant that he had elected to disaffirm the contract, and at the same time demanded the return of his truck. Nothing had been paid on the contract except the initial payment of three hundred dollars, evidenced by the turn-in of the truck. The DeVaux car had then been run about twenty-one hundred miles, and had depreciated in value to the extent of two hundred and fifty dollars or more; one witness estimated the depreciation as high as five hundred dollars. In the meantime, appellant had expended $77.30 in overhauling and repairing the truck.

At the time that this action was begun, respondent sued out a writ of replevin and gave the necessary bond. Appellant promptly posted a redelivery bond and retained possession of the truck. Respondent in his complaint demanded damages for loss of use of the truck while out of his possession and after demand therefor. According to the evidence, respondent's damages in that respect amounted to $72.90. The trial court appears to have balanced the cost of overhauling and repairing the truck against the damages for claimed loss of use, and allowed recovery only for the return of the truck.

Two questions are presented upon this appeal, one of which is purely a question of law, and the other a mixed question of law and fact.

The first question relates to the restoration to be made by a minor on disaffirming his contract. Rem. Rev. Stat., § 5829, reads:

"A minor is bound, not only by contracts for necessaries, but also by his other contracts, unless he disaffirms them within a reasonable time after he attains his majority, and restores to the other party all money and property received by him by virtue of the contract, and remaining within his control at any time after his attaining his majority."

Respondent had not yet reached his majority when he declared his disaffirmance, nor at the time of the commencement of this action. It will be noted that the statute requires the minor to restore to the other party all money and other property received by him by virtue of the contract and *remaining* within his control. The statute does not require the restoration of the property in its original condition or in lieu thereof the payment of its equivalent in value, nor does it require the minor to compensate the other party for the use or depreciation of the property, but merely requires him to restore that which he retains or controls.

It is the general rule, announced and followed by a great majority of the courts in this country, that an infant, on disaffirming his contract, is required to return only so much of the consideration as remains in his hands in specie, and is not required to make good to the other party the portion of the consideration that has been disposed of, lost or wasted during his infancy. This is particularly true where the contract is for the purchase of personal property. 31 C. J. 1070-1; 11 A. L. R. 491; 50 A. L. R. 1187.

There are respectable authorities to the contrary, but they are in the minority. The reason given by the courts in those jurisdictions which have adopted the minority rule, is that a minor may not accept the benefit of a contract, fair upon its face and fair in its execution, without returning its equivalent in value to the other party; that, seeking equity, he must do equity. On the other hand, the reason underlying the majority rule is that the welfare of the infant is, in such cases, the first consideration of the law, and its policy is to protect the infant against improvidence and folly, because his mind and judgment are immature. The improvidence which the law contemplates is not simply the making of an unwise contract, but very often is the

use or misuse to which the property is put after it is purchased. To deny the privilege or right of disaffirmance, when that improvidence or folly has become apparent, would permit the accomplishment of the very thing against which the law seeks to provide.

In some states, the statute compels the infant, upon disaffirmance, to restore the property received by him, or else to pay its equivalent in value. Our statute does not contain such alternative provision, but rests upon a broader policy. We conclude, here, that respondent fully complied with the statute above quoted and with the rule that conforms to the policy of the law in this state.

The second question relates to the conditions under which a minor may disaffirm his contract. Rem. Rev. Stat., § 5830, reads:

"No contract can be thus disaffirmed in cases where, on account of the minor's own misrepresentations as to his majority, or from his having engaged in business as an adult, the other party had good reasons to believe the minor capable of contracting."

It will be noted from a reading of this section of the statute that, in order to prevent disaffirmance, there must be either an actual misrepresentation of age by the minor, or else an implied misrepresentation arising from his having engaged in business, whereby the other party has good reason to believe him to be capable of contracting. There is not a syllable of testimony nor a shred of evidence in the record that respondent actually misrepresented his age. We may, therefore, disregard that element. Whether respondent's former business activities and enterprises were such as to lead one generally to believe him capable of contracting, is immaterial in this case, because the court, in its memorandum opinion and also in its findings of fact, specifically found that Stradley, the agent

of appellant, knew that respondent was not then of age. While there is some evidence to the contrary on this point, we think that the preponderance of the evidence as a whole supports the court's findings. We are not at liberty to upset those findings in the face of such preponderance. *Herz v. Ransom,* 168 Wash. 512, 12 P. (2d) 750. Inferences, though otherwise legitimate, can not be drawn contrary to, and in the face of, actual knowledge.

In conclusion, we think that it is proper for us to say that we are satisfied that the contract between the parties was in all respects a fair one to the respondent, and that the appellant acted in all honesty and good faith, without any attempt to overreach the minor, but the law of this state and the facts found by the court necessitate our holding against the contentions of appellant.

The judgment is affirmed.

BEALS, C. J., MAIN, TOLMAN, and BLAKE, JJ., concur.