STANFORD PETROLEUM CO. v. JANSSEN et al.

No. 7095.   Decided September 29, 1949.   (209 P. 2d 932.)

See 17 C. J. S., Contracts, sec. 472. Performance of condition or promise in contract as affected by conduct of other party, see note, 79 A. L. R. 1240. See, also, 49 Am. Jur. 167.

*Moyle, McKay, Burton & White,* Salt Lake City, for appellants.

*Stephens, Brayton & Lowe,* Salt Lake City, for respondent.

McDONOUGH, Justice.

Plaintiff sued defendants to recover $1,000 paid to defendant Janssen. Defendant corporation counterclaimed for specific performance of a contract for assignment of an oil lease. From a judgment against both defendants awarding plaintiff recovery of $1,000 and denying any relief on the counterclaim, defendants each appeal.

Plaintiff is a partnership engaged in the production of a heavy viscous bitumen substance from wells north of Great Salt Lake. It had not yet developed any market for production at the time of the transactions in question. Defendant corporation has a State lease on other land in the same field, which produces the same kind of material. It had some contracts with rubber manufacturers, and had obtained some orders prior to the war, but those markets were lost in consequence of war-time conditions. Beginning in June, 1946, plaintiff entered into negotiations with defendant corporation to acquire the State lease held by the latter. Various offers made prior to September 26, 1946, were rejected. Janssen made a number of contacts on the west coast during the summer of 1946. On September 24, 1946, he came to Salt Lake City and informed Paul W. Harr, general partner of plaintiff company, that he was going east

to endeavor to build up a market for this material, and that he desired to know if Harr was interested in joining in the expense of such trip on which Janssen would try to sell the products of both companies.

According to Harr's own testimony, he said to Janssen:

"I will give you a thousand dollars now and if you need any money in the future while you are on the trip, send me an accounting of the money, what you have accomplished and I will see that you are furnished with more money."

On the same day, September 24th, Harr wrote a check in favor of Janssen personally for $1,000, and made the following notation on the back of it:

"Only for sales expense, and payment to John F. Janssen, of materials of Stanford Pet. Co. & Rozel Asphalt Co."

Harr also testified that he gave Janssen the $1,000 check because he wanted him to get a market for the product; that he thought Janssen was the logical man to develop the market at that time in view of his previous contacts and his experience with the product; and that he expected Janssen to "leave immediately."

Janssen did not leave the same day, but made an appointment with plaintiff for the following day. Janssen endorsed the check for deposit to the account of Rozel Asphalt Company, and on September 25, 1946, withdrew $500 to apply on expenses. Janssen's explanation for not leaving the following day was that he had some discussions with plaintiff, and that when he did leave after the controversy arose on October 7, 1946, he went first to the Pacific coast before going east. He testified that certain preparations had to be made before going east, such as obtaining suitable samples, some of which were not available until he completed his trip to the coast. He further testified that he had previously made contacts, and that further contacts without presentation of samples would be useless.

Pending the time Janssen was ready to commence his trip, he had conferences with Harr. On September 26, 1946, through Harr plaintiff presented to defendants a letter whereby plaintiff offered to purchase the State lease from defendant corporation for $12,000, payable $6,000 upon approval of assignment of lease by the State Land Board, with the balance of the purchase price to be evidenced by a promissory note payable on January 2, 1947, with 4% interest. At the close of the letter appeared the following:

"This agreement shall remain in force and effect for a period of ten days from date and thereafter shall become null and void."

On the bottom of the letter was typed the word "Accepted." The acceptance was signed by defendant Janssen on behalf of the defendant corporation the same day the letter was presented.

Harr proceeded to make out the various papers which he deemed essential to consummate the transfer of the lease. Among those papers prepared by him for signature were a resolution of the board of directors of defendant corporation, and an assignment of lease, both dated September 28, 1946. These documents were duly executed by Janssen on behalf of said corporation and on the date they bear, and Harr presented them to the State Land Board on October 3, 1946. The State Land Board refused to approve the assignment of lease unless the clause providing an overriding royalty of 2½% to defendant corporation were deleted. It also required the plaintiff to execute an acceptance of assignment of lease on forms approved by the board. Harr then telephoned to Janssen, advising the latter that the overriding royalty clause would have to be deleted, and that he would receive a letter in the mail as to the board's requirements. Harr obtained the forms for acceptance of assignment of lease, at the State Land Office. On October 5th defendants received the letter from the board alluded to by Harr. The following day, a Sunday, the parties met and defendants then offered to delete the 2½% overriding royalty provision

from the assignment of the lease, and to have such provision covered by separate agreement. All of the papers prepared to that date were prepared by Harr, and according to Janssen's testimony, Harr agreed to make out all the papers as he had previously done.

At 9:30 A.M. on Monday, October 7, 1946, plaintiff delivered a letter to defendants stating that "due to failure to deliver assignment of lease" within 10 days, plaintiff was not interested in *negotiating* any further for the purchase of said lease, and that all negotiations were thereby terminated. On receiving such letter, Janssen said to Harr: "Then I will sue you." Harr replied: "John, I will take my thousand dollars back."

An argument ensued, and plaintiff commenced this action the same day to recover the $1,000 paid to Janssen. The corporation was joined as defendant, summons being served the day suit was filed. Plaintiff alleged that Janssen on September 24, 1946, entered into agreement with plaintiff whereby he undertook to travel immediately to Chicago and other points east, to act as a sales representative for plaintiff and for defendant corporation, to secure contracts for the sale of the products of said two companies for which he was to receive $1,000 expense money from plaintiff; that he received a check for said sum; that Janssen failed to render such service, and that he wrongfully endorsed the check over to defendant corporation whereby said corporation became unjustly enriched.

Defendant corporation denied liability for the $1,000 allegedly deposited in the account of the corporation by Janssen and withdrawn by him; and the corporation also counterclaimed for specific performance of the contract for purchase of the oil lease, and for damages.

The sole contention made by Janssen on this appeal is that the trial court predicated judgment against him upon a finding that the $1,000 check was given for services which

he failed to render, and that such finding is contrary to the evidence.

The Rozel Asphalt Company makes two contentions: (1) that even if judgment against Janssen could be sustained, the evidence does not show any legal or equitable basis for a judgment against the corporation in the sum of $1,000 nor for any other amount. (2) That the court erred in dismissing the counterclaim and in denying defendant corporation relief on the counterclaim.

With reference to the money judgment, the first question to decide is whether Janssen is liable. If the judgment against him cannot be sustained, judgment against the corporation must be set aside. The complaint alleges that the $1,000 check was given to Janssen for expenses. The testimony of Harr shows that neither the direction of travel nor the precise time of departure was specified. An ultimate objective was agreed upon, which was that of obtaining a market, if possible, for the natural resource which each company separately produced. The finding that Janssen was paid for services which he failed to render, cannot be sustained. Janssen did what he agreed to do as such agreement is evidenced by Harr's own testimony. The finding that Janssen obtained only 2 orders, both of which were for defendant corporation, is immaterial, since the payment for expenses was not contingent on production of any orders for plaintiff. Likewise the finding that Rozel Asphalt Company obtained the benefit of the trip does not warrant a conclusion that the money was not used for the purposes for which it was given, since it was contemplated that defendant corporation would also likely benefit from such a trip.

The finding that Janssen agreed to travel "immediately" to Chicago, and that the time for him to perform expired and that he failed to perform, is not supported by the evidence, but rests upon a conclusion expressed by Harr. In the first place, any delay in departure was acquiesced in

by Harr, for on September 26th Harr made a proposal to purchase from defendant corporation the State lease owned by the latter, and the negotiations conducted and the signatures of Janssen required on the papers prepared by Harr to consummate such purchase, necessitated the presence of Janssen as a director and president of defendant corporation. In fact, a series of conferences was conducted up to October 7th, and Janssen left on October 8th. Furthermore, Harr's own testimony is to the effect that the direction of travel was entirely within the discretion of Janssen, since he said he wanted to see a market develop and Janssen could go east, west, north or south. It is undisputed that not all of the rubber manufacturers could be contacted by going east, and that some establishments are on the west coast.

Furthermore, such a trip contemplated adequate preparation. While Harr testified that Janssen had samples, his statement was general. Janssen testified that he had contacted various concerns on previous trips, and that it would be useless to make further contacts without presentation of the samples, some of which were not ready on September 24th. In view of the nature of the undertaking, it could hardly be contended that Harr's contribution to such a project was conditioned on Janssen's departure on September 24th, regardless of the stage of preparation. Since Harr admitted he was inexperienced in the project which Janssen was undertaking—to attempt to build up a market for the material—the extent of preparation and the itinerary were left to Janssen's own discretion. Harr recognized Janssen as the "logical person" to make such a trip. Janssen had already been successful in making certain contracts prior to the war, and he was planning a trip based in part on prior contacts as well as new contacts.

There is no evidence that the money, which Janssen testified was deposited in the account of the corporation for convenience in checking out in connection with a credit card, was used for any purpose other than the purpose for which it was given. There is no evidence that the money was

diverted to some other purpose. Plaintiff was entitled to a report on the trip, but not to the judgment rendered. The agreement was that plaintiff would advance additional funds, if Janssen gave an accounting and showed that such funds would be spent advantageously.

We are not called upon to decide whether plaintiff might have been entitled to a return of the $1,000 on the theory that when Harr asked for refund of that sum prior to the date Janssen commenced performance, plaintiff was entitled to a return of the money although it thereby rendered itself liable for damages in an action for breach of contract. The action was not tried below on such theory. Failure of performance by defendant Janssen was the ground alleged and attempted to be proved to support a recovery.

The judgment against Janssen cannot be sustained under the evidence. Consequently, the judgment against the corporation likewise cannot be sustained. Our finding in favor of Janssen obviates the necessity for any discussion of the contention that the corporation was not unjustly enriched and therefore would not be liable even if the judgment against Janssen were upheld.

The corporate defendant, as heretofore stated, also complains of the refusal of the trial court to grant any relief against plaintiff on the counterclaim. The court predicated its judgment on the counterclaim on a finding that defendant corporation was not able nor ready to perform its promise to assign the state lease before expiration of the time limit fixed for such performance. It is appellant corporation's contention that since the tenth day after the date of the letter of plaintiff offering to purchase the lease was a Sunday, it had the following day in which to perform. It further contends that the letter hereinabove referred to, which the plaintiff wrote and delivered to Janssen on the morning of the last day for performance, constituted an "anticipatory breach" which excused a tender of performance by it on that day. Respondent here concedes that ap-

pellant corporation had the whole of Monday in which to perform its promise. It contends, however, that the finding of the court below relative to appellant corporation's inability to perform is supported by the record.

The rule governing this phase of the appeal is stated in Restatement of the Law, Contracts, 1 A. L. I., Sec. 306, which reads as follows:

"When failure of a party to a contract to perform a condition or a promise is induced by a manifestation to him by the other party that he cannot or will not substantially perform his own promise or that he doubts whether though able he will do so, the duty of such other party becomes independent of performance of the condition or promise. He has power to nullify his manifestation of unwillingness or inability by retracting it, so long as the former party, in reliance thereon, has not changed his position."

Comment (a) following such rule reads as follows:

"a. No man is compelled to do a useless act, and if performance of a condition will not be followed by performance of the promise which is conditional, it is useless for the intended purpose and it is therefore unnecessary to perform the condition. A promisee in judging whether performance of a condition will not be followed by performance of the promise is justified in taking the other party at his word. *Nevertheless, if the condition could not or would not have been performed had there been no repudiation of the promise, the promisor is not precluded from asserting the requirement of the condition.* In such a case both parties are free." (Italics added.)

The willingness of the appellant corporation to perform its promise is conceded. It must likewise be conceded that it had the ability to perform if the record establishes that it could have secured the approval of assignment of the lease by the State Land Board on October 7, 1946. The only evidence in the record touching this question is the testimony of Mr. J. Fred Pingree who was then executive secretary of the State Land Board. He stated in substance that the board would have to hold a meeting in order to approve the assignment of the lease. No regular meeting of the board would be held until ten days following October 7th. In response to a question he stated that if something of sufficient

importance were presented, the Land Board would hold a special meeting. Whether or not an application for approval of an assignment of a lease would be considered a matter of such importance as to induce the board to hold a special meeting, does not appear. However, it does appear from the record that when the ten days' limitation for performance by defendant corporation was written into the offer of September 26th, the parties had in mind that the State Land Board would hold a regular meeting prior to the expiration of the time stipulated, and hence give opportunity to get the approval of the board.

In the light of the whole record the court was not required to find that the defendant corporation was able to perform at the time performance was due, and hence its judgment on the counterclaim must be upheld.

The judgment in favor of the plaintiff and against the defendants on plaintiff's complaint is reversed and the cause is remanded with directions to enter judgment thereon in favor of defendants. The judgment on the contract is affirmed. Each party to bear his or its own costs.

PRATT, C. J., and WADE, WOLFE and LATIMER, JJ., concur.