396 P.2d 467

**Stephen LOOMIS, Plaintiff-Appellant,**

v.

**IMPERIAL MOTORS, INC., Defendant-Respondent.**

No. 9487.

Supreme Court of Idaho.

Nov. 2, 1964.

Holden, Holden & Kidwell, Idaho Falls, for respondent.

Ferebauer & Barnard, Idaho Falls, for appellant.

McQUADE, Justice.

On August 30, 1963, the plaintiff-appellant, Loomis, an unmarried minor over the age of eighteen, purchased an automobile, paying cash and receiving credit for a motorcycle as a trade-in. Loomis was a member of the United States Navy temporarily assigned in Idaho Falls, Idaho, at the time of the purchase. Within two weeks after purchasing the automobile, Loomis drove to his permanent residence of Yuba City, California. Imperial Motors, Inc., knew Loomis was from California and that he had driven the car from Idaho Falls to California and the return. At this time Loomis disaffirmed the contract and offered the return of the automobile, to-wit: September 19, 1963, the day before his twenty-first birthday: Such offer was refused by the defendant-respondent, Imperial Motors, Inc.

Within a few days following his twenty-first birthday, Loomis commenced this action.

By agreement on November 7, 1963, the automobile was accepted by Imperial.

This action was originally filed in the probate court of Bonneville County and an appeal was taken to the district court by Loomis from a judgment of that court. The district court entered judgment for return of the purchase price to Loomis but allowed an offset for rental between the date of the original offer to return and refusal thereof and the date of the actual return.

From that judgment of the district court, Loomis appeals and assigns error to the allowance of rental as damages. The district court will hereinafter be referred to as the trial court.

The trial court in awarding the offset made a finding that the offer to return had been revoked by Loomis' retaining possession and by his continuing to drive and use the car until the 7th day of November, 1963. The trial court determined that Imperial was entitled to a reasonable rental value during that period.

The right of minors to disaffirm contracts is provided by I.C. § 32–103:

"* * * if the contract be made by the minor whilst he is over the age of eighteen (18), it may be disaffirmed in

like manner upon restoring the consideration to the party from whom it was received, or paying its equivalent."

This court, applying this statute in Lakey v. Caldwell, 72 Idaho 52, 237 P.2d 610 (1951), stated that the capacity of a minor to contract is not absolute but is " * * * voidable upon his restoring, or offering to restore, the consideration." See also Lockard v. St. Maries Lumber Co., 76 Idaho 506, 285 P.2d 473 (1955); Murdock v. Fisher Finance Corp., 79 Cal.App. 787, 251 P. 319 (1926); Clemons v. Olshine, 54 Ga. App. 290, 187 S.E. 711 (1936); McClure Motor Co. v. Irwin, 138 Kan. 35, 23 P.2d 470 (1933); Brown v. Wood, 293 Mich. 148, 291 N.W. 255, 127 A.L.R. 1436 (1940); Snodderly v. Brotherton, 173 Wash. 86, 21 P.2d 1036 (1933).

It is a well settled rule that tender, if offered and refused, excuses the tendering party from the necessity of any further offer. Peterson v. Hudson Ins. Co., 41 Ariz. 31, 15 P.2d 249 (1932); Woods-Drury v. Superior Court, 18 Cal.App.2d 340, 63 P. 2d 1184 (1937); Stanford Petroleum Co. v. Janssen, 116 Utah 352, 209 P.2d 932 (1949). In Gardner v. Spurlock, 184 Kan. 765, 339 P.2d 65 (1959), the court stated that " * * * it is a well settled doctrine that a tender or demand otherwise indispensable is no longer required when its futility is shown." Clearly an offer and a refusal is futility enough.

After disaffirmance and return of consideration, the contract is " * * * avoided ab initio, and the rights of the parties in reference to the subject-matter of it are the same as if no contract had ever been made." Hooper v. Commercial Lumber Co., 341 P.2d 596 (Okl.1959). See also Long v. Newlin, 144 Cal.App.2d 509, 301 P.2d 271 (1956); Reserve Oil and Gas Co. v. Metzenbaum, 84 Cal.App.2d 769, 191 P.2d 796 (1948); Boomer v. Muir, 24 P.2d 570 (Cal.App.1933); Russell v. Stephens, 191 Wash. 314, 71 P.2d 30 (1937). Doenges-Long Motors v. Gillen, 138 Colo. 31, 328 P.2d 1077 (1958), uses the language that:

"On disaffirmance the contract is abrogated ab initio. In 43 C.J.S. Infants § 75, p. 176, it is said:

" 'The general rule, which has been said to have its exceptions and limitations, is that the disaffirmance of a contract made by an infant nullifies it and renders it void ab initio, and that the rights of the parties are to be determined as though the contract had not been made, the parties being restored to the status quo as far as possible * * *.' "

There being a disaffirmance, the sale becoming void, the relationship of vendor-vendee having been dissolved, there is no basis for Imperial's contention that a return is revoked by the use and possession.

Where Loomis has avoided the purchase, no contract may be imposed other than one implied at law. We reserve, until later in this opinion, comment upon the contention of a contract implied in law.

However, Loomis still owes a responsibility toward the automobile of Imperial. That responsibility falls well within the definition of bailment. Black's Law Dictionary (4th) defines Bailment as:

"A delivery of goods or personal property, by one person to another, in trust for the execution of a special object upon or in relation to such goods, beneficial either to the bailor or bailee or both, and upon a contract, express or implied, to perform the trust and carry out such object, and thereupon either to redeliver the goods to the bailor or otherwise dispose of the same in conformity with the purpose of the trust. Fulcher v. State, 32 Tex.Cr.R. 621, 25 S.W. 625."

Applied to the facts of the case at hand, delivery was implied, in that possession was in the hands of Loomis, the bailee.

"When possession of personal property of another is acquired and held under circumstances where the recipient, upon principles of justice, ought to keep it safely and restore or deliver it to the owner, as, for example, where possession has been acquired accidentally, gratuitously, through mistake, or by agreement, since terminated for some other purpose than bailment, the law, irrespective of any actual meeting of the minds, any voluntary undertaking, or any reasonable basis for implying a mutual benefit, imposes upon the recipient the duties and obligations of a bailee. Such bailments are known as constructive and involuntary bailments, and ordinarily the party in possession of the property is regarded as a gratuitous bailee, * * *." 8 Am. Jur.2d, Bailments, § 52 at p. 958.

The phrase of gratuitous bailee is synonymous with a bailment for the sole benefit of the bailor. As derived from the civil law and the common law, gratuitous bailments or bailments for the sole benefit of the bailor were classified as deposits. These deposits were a naked bailment of goods to be kept without recompense and returned when the bailor required it. Story on Bailments, 7th Edition (1863), § 4, p. 8. This is incorporated into later writings which accepted the basic classifications of Story. Schouler, in his treatise on bailments, stated:

"Now the mutual rights and liabilities of bailor and bailee, at our law, turn essentially, we shall find, upon the contemplation of recompense or no recompense. The fundamental idea of our whole subject is that one whose pains are to go wholly unrewarded ought to be the most lightly bound; a

maxim which, however distasteful to the strict moralist, is thoroughly consonant with the teachings of the common law. And since no nice gradation by the amount of recompense is here attempted, bailments at common law may well be grouped under these three heads, as Judge Story himself has admitted: (1) Those for the sole benefit of the party on the bailor's side, or, at least, without benefit to the bailee; (2) Those for the sole benefit of the party on the bailee's side; (3) Those for the benefit of both parties. * * *" Schouler's Bailments and Carriers, Third Edition, 1897, § 14 at p. 15.

█ The liability of a gratuitous bailee or a bailee under a bailment for the sole benefit of the bailor is generally recognized as one arising only for gross negligence. Armored Car Service, Inc. v. First National Bank of Miami, 114 So.2d 431 (Fla.App. 1959); Maddock v. Riggs, 106 Kan. 808, 190 P. 12, 12 A.L.R. 216 (1920); Boyd v. Harrison State Bank, 102 Mont. 94, 56 P.2d 724 (1936); Maitlen v. Hazen, 9 Wash.2d 113, 113 P.2d 1008 (1941); Corwin v. Grays Harbor Washingtonian, 159 Wash. 92, 292 P. 412 (1930); Story on Bailments, 7th Edition, § 23 at p. 25 (1863). But these cases speak only in the situations of damage to the bailed goods or loss of those goods while operating within the limits of the bailment.

The ultimate question in this case does not depend upon the loss of the bailed goods or upon any injury arising from the bailment. The ultimate question arises out of a claim for compensation by the bailor for the use of the goods bailed, this claim being for a reasonable rental value. Respondent, Imperial, concedes that the vehicle was rightfully in the possession of the appellant, Loomis. But use of the property bailed depends upon whether or not that particular use in question is authorized by the circumstances of the bailment.

Treatise writers have dealt with the problem of use by a gratuitous bailee since the law of bailment existed but have dealt, at best, in general terms. Story stated that:

"In general it may be laid down that the depositary [bailee] has no right to use the thing deposited, unless there be an express or implied consent on the part of the depositor [bailor]." Story, § 89 at p. 82.

Further:

"The best general rule on the subject (for every case must be governed by its own particular circumstances), is to consider, whether there may or may not be an implied consent on the part of the owner to the use. If the use would be for the benefit of the de-

posit, the assent of the owner may well be presumed; if to his injury, or perilous, it ought not to be presumed; if the use would be indifferent, and other circumstances do not incline either way, the use may be deemed not allowable." Story, § 90 at p. 83.

As for the principles of a bailee's use of bailed goods, Am.Jur.2d set forth the principle propounded in Alvord v. Davenport, 43 Vermont 30 (1870), by stating:

"The right of the bailee to use the bailed property and the extent to which it may be used is one of the incidents of bailment governed by the intention of the parties as expressed by, or inferred from, the contract between them, the nature of the bailment, and all the surrounding circumstances. In the absence of any contract on the subject of the use, no rule of universal application can be laid down; each case must be governed by its own particular circumstances, such as the character and purpose of the bailment and the nature of the property, in connection with the other attending incidents." 8 Am.Jur.2d, Bailments, § 193 at p. 1078.

In explaining, it goes on to say that:

"In some cases the assent of the owner may be inferred as a fact from the circumstances, but that is not always necessary, for in other cases the presumed assent is a mere fiction, and the question as to the right of the bailee to use the property becomes a question of law upon a given state of facts, without reference to any actual assent of the owner, in fact." Supra, at p. 1078.

■ Imperial considered the automobile as being owned by Loomis. Imperial knew that Loomis was from out of town, that his Idaho employment was a considerable distance from his Idaho Falls residence, and that Loomis would probably drive the automobile to provide himself with necessary transportation. This series of circumstances is sufficient to entitle Loomis to possession of the automobile and to a reasonable use of the automobile subject to any damage or loss to the automobile resulting from gross negligence. There is no evidence upon the record of gross negligence or question for this court relating to attending damages resulting from gross negligence.

■ Imperial contends that the reasonable rental value should be assessed against Loomis on the grounds of quasi-contract. The relationship of Imperial-Loomis is that of bailor-bailee. This court will not imply a contractual relationship between these parties in light of their positions under the bailment.

That portion of the judgment appealed from allowing an offset is reversed.

Costs to appellant.

KNUDSON, C. J., and McFADDEN, TAYLOR and SMITH, JJ., concur.