540 P.2d 1132 (1975)
Howard KEEFE, Plaintiff-Appellee,
v.
BEKINS VAN & STORAGE COMPANY, a Colorado Corporation, Defendant-Appellant.
No. 75-184.
Colorado Court of Appeals, Div. III.
September 3, 1975.
*1133 James H. Howard, Denver, for plaintiff-appellee.
Kenneth C. Groves, Denver, for defendant-appellant.
Selected for Official Publication.
VanCISE, Judge.
Defendant, Bekins Van & Storage Co. (the warehouseman), appeals from a judgment entered for plaintiff, Howard Keefe (the bailor), following trial to the court. The judgment was for the value, as found by the court, of certain goods consisting of clothing, household furniture, and furnishings stored with the warehouseman and later redelivered to the bailor in a damaged condition due, according to the court, to the negligence of the warehouseman. The warehouseman appeals, contending: (1) That it was not negligent and therefore not liable; (2) that even if liable, the amount of liability for the stored goods is limited to ten cents per pound by a provision in the warehouse receipt; and (3) that in any event, there was insufficient evidence to support the amount of damages awarded by the court. We affirm as to liability, reverse as to the amount of the damages, and remand for a new trial on the issue of damages only.

I.
It is undisputed that in February of 1973, the warehouseman accepted the bailor's goods for storage and redelivered them in September 1973 in a water-damaged condition. Under these circumstances, "a presumption of negligence on the part of the warehouseman arises, and the burden of going forward with evidence to rebut that presumption rests on the warehouseman. There is, however, no shift in the burden of proof, which still remains *1134 with the plaintiff." Hipps v. Hennig, 167 Colo. 358, 447 P.2d 700; Bankers Warehouse Co. v. Bennett, 148 Colo. 323, 365 P.2d 889; Chabot v. Williams Chevrolet Co., Inc., 30 Colo.App. 277, 491 P.2d 612. A prima facie case of negligence was therefore established by the bailor.
The applicable standard of care is set forth in § 4-7-204(1), C.R.S.1973:
"A warehouseman is liable for damages for loss of or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful man would exercise under like circumstances, but unless otherwise agreed, he is not liable for damages which could not have been avoided by the exercise of such care."
The testimony adduced by the warehouseman showed that in July, before possession was taken of the warehouse in which the goods were damaged, a certificate of occupancy was issued by the building department. Then the bailor's goods were moved in and stored. One of the sprinkler system pipes directly above the place where the goods were stored had not been connected, and water from that pipe leaked down on bailor's property and caused the damage. None of the warehouse personnel had checked to see whether there were any water leaks before the goods were placed under the pipes. The leak was discovered a day after the warehouseman took possession of the warehouse. At that time, several crates were moved out and some were inspected and found to be water-damaged.
The warehouseman claims that the above evidence established that it was the plumbing contractor who was negligent. However, the court found that the warehouseman's failure to look at the pipes and inspect the area before placing the goods constituted negligence, and that, had any of its personnel looked, the leaking would have been discovered and could have been rectified before any damage was done to the goods. There being support for these findings in the record, they must be sustained. Hipps v. Hennig, supra.

II.
The warehouseman offered, but upon objections by the bailor the court refused to admit into evidence, a number of documents including the bill of lading and the warehouse receipt. The warehouse receipt contained the following provision:
"DECLARED VALUELIMIT OF COMPANY'S LIABILITY. Depositor hereby declares the value of all said goods to be not in excess of 10¢ per pound per article, unless a higher value is declared by him in writing, in which event higher charges shall apply."
The bill of lading provided that:
"The liability of this company for any piece, package or its contents is limited to 10 cents per pound per article. . . unless a higher valuation is declared in writing and so noted hereon in which case rates based on such higher valuation will be assessed."
The bailor testified that these documents bore his signature and were first signed at the time of or shortly after the goods were delivered to the warehouseman. However, in uncontroverted testimony he maintained that from the time of signing and until redelivery he was not aware of the limitation of liability or declaration of value provisions thereinhe had not read them, they were not discussed with him, and no possible higher rate was quoted to him.
The court refused to admit any of the documents into evidence because (1) there were or appeared to be handwritten additions or alterations thereon, apparently made after bailor signed them, not accounted for by the warehouseman, and (2) because some, but not all, were carbon copies and not originals. However, they were offered for only limited purposes, i.e., that they were signed by the bailor and that printed words therein contained a limitation of liability. None of the disputed handwritten notations on the *1135 documents pertained to the bailor's signature or to the limitation of or extent of liability, and hence were not "material to the question in dispute." See C.R.C.P. 43(h). The bill of lading and the warehouse receipt were signed originals. See C.R.C.P. 43(g). Consequently, it was error not to admit these two documents for the limited purposes for which they were offered. See C.R.C.P. 43(a); Roblek v. Horst, 147 Colo. 55, 362 P.2d 869.
The presently applicable statute, § 4-7-204(2), C.R.S.1973, specifically provides that a warehouseman may limit his liability for damages to stored goods. It states:
"Damages may be limited by a term in the warehouse receipt or storage agreement limiting the amount of liability in case of loss or damage, and setting forth a specific liability per article or item, or value per unit of weight, beyond which the warehouseman shall not be liable; provided, that such liability may on written request of the bailor at the time of signing such storage agreement or within a reasonable time after receipt of the warehouse receipt be increased on part or all of the goods thereunder, in which event increased rates may be charged based on such increased valuation . . . ."
Denver Union Terminal Railway Co. v. Cullinan, 72 Colo. 248, 210 P. 602, and French v. Bekins Moving & Storage Co., 118 Colo. 424, 195 P.2d 968, appear to negate the effect of this provision, but neither is of current precedential value. Both did stand for the proposition that such limitations on liability are generally unenforceable; however, they are based upon a subsequently repealed statute against impairment of a warehouseman's obligation as to care.
Under the plain language of § 4-7-204(2), C.R.S.1973, the liability of this warehouseman is limited to the amount specified in the warehouse receipt which in this case is 10 cents per pound per article, even though this limitation was not called specifically to the bailor's attention by the warehouseman. See World Products, Inc. v. Central Freight Service, Inc., D.C.N.J., 222 F.Supp. 849, affirmed, 342 F.2d 290 (3d Cir. 1965); Dunfee v. Blue Rock Van & Storage, Inc., 266 A.2d 187 (Del.Super. 1970). Hence the judgment, entered without reference to that limitation, cannot stand.

III.
Inasmuch as the trial court erroneously barred the warehouseman from establishing the limits on liability and thus led the bailor to proceed on a basis of full value recovery, we are remanding the cause for a new trial limited to damages. Since the court's earlier valuation of the goods was erroneously based on full replacement cost without diminution, the following principles should be utilized in assessing the damage sustained by the bailor, subject to the limitation of 10 cents per pound per article.
Where household goods, wearing apparel and personal effects have a market value, as for example, TV's, stereos, musical instruments, furniture, etc., then the measure of damages for negligent harm to personal property bailed with a warehouseman is the difference between the fair market value of the goods at the time the injury was discovered and what would have been the fair market value at that time if the goods had not been damaged. Trujillo v. Wilson, 117 Colo. 430, 189 P.2d 147; Lopeman v. Gee, 40 Wash.2d 586, 245 P.2d 183. Original cost may be considered in determining market value, but only if combined with other factors such as the length of time the property has been used, its condition just before and its salvage value after the damage occurred. See Colorado Kenworth Corp. v. Whitworth, 144 Colo. 541, 357 P.2d 626. Where an item is merely damaged and is repairable at reasonable expense, the cost of repairs may be used as the measure of damages. Coe v. Esau (Okl.), 377 P.2d 815.
Where the articles have no market value in the ordinary sense, such as used *1136 clothing, photographs, certain household goods and personal effects, then they may be given a reasonable value on the basis of their value to the owner. Zenier v. Spokane International Railway Co., 78 Idaho 196, 300 P.2d 494. For this purpose, original cost and the practicability and expense of replacement can be considered. Sarkesian v. Cedric Chase Photographic Laboratories, Inc., 324 Mass. 620, 87 N.E.2d 745. This is not to be "any fanciful value which he might place upon them, but such reasonable value as from the nature and condition of the goods and the purpose to which they were adapted and used, they had to him." Gouge v. Hoge, 203 Okl. 149, 218 P.2d 1036.
The judgment is affirmed as to liability and reversed as to damages, and the cause is remanded with directions to grant a new trial restricted to the issue of damages in accordance with this opinion.
SILVERSTEIN, C. J., and PIERCE, J., concur.