Evelyn K. CHRISTENSEN, Petitioner,

v.

Ruth F. HOOVER and Harold T. Hoover, Respondents.

No. 80SC46.

Supreme Court of Colorado, En Banc.

April 5, 1982.

James L. Aab, Lakewood, for petitioner.

Herman Rothstein, Commerce City, for respondents.

ERICKSON, Justice.

We granted certiorari to review *Christensen v. Hoover*, 43 Colo.App. 501, 608 P.2d 372 (1979), which reversed a judgment holding a landlord and a professional mover jointly and severally liable for damage to a tenant's personal property when it was removed from the rented premises pursuant to a forcible entry and detainer action. We affirm in part and reverse in part, and remand this case to the court of appeals for further proceedings consistent with this opinion.

### I.

In September 1976, petitioner, Evelyn Christensen, entered into an oral lease agreement with respondents, Ruth and Harold Hoover, for the rental of a house owned by the Hoovers in Sheridan, Colorado. In early November 1976, a dispute arose concerning the amount of rental payments owed. As a result of alleged nonpayment of rent, the Hoovers commenced a forcible entry and detainer action in the County Court of Arapahoe County.[1] There-

after, the Hoovers obtained a default judgment against Christensen, and a writ of restitution was issued to allow the Hoovers to regain possession of the premises. A copy of the writ of restitution was then posted on the front door of the house.

On December 14, 1976, a deputy sheriff of Arapahoe County executed the writ of restitution. Since Christensen was temporarily living elsewhere because of an illness in her family, she was not present at the time the writ was executed. The Hoovers hired Richard Slatten, d/b/a Liberty Moving and Storage, to meet them and the deputy sheriff at the premises to remove Christensen's possessions from the house. Slatten removed all of Christensen's furniture and personal belongings from the house to a moving van, and transported them to a private storage facility. Slatten then unloaded Christensen's property into a storage shed which the Hoovers had rented. The Hoovers thereafter refused to disclose the location of the property to Christensen.

In February 1977, the Hoovers authorized the storage facility to make the property available to Christensen upon her payment of accrued storage charges of $58.30. On February 11, 1977, Christensen paid the charges and obtained possession of her furniture and personal belongings, which were damaged at the time she retrieved them. In addition, Christensen could not locate some of the items which had been in the rented house.

Thereafter, Christensen filed suit in the District Court of Arapahoe County against the Hoovers and Slatten alleging, *inter alia*, that the defendants were liable as bailees for damaging her property during the moving process and for conversion of the missing items. In a trial to the court, judgment was rendered in favor of Christensen and against the Hoovers and Slatten jointly and severally in the amount of $1,025 plus interest and costs for the damage sustained. The court found that: (1) Slatten was an agent of the Hoovers in the course of his employment when he removed, transported,

---

1. Section 13–40–101 *et seq.*, C.R.S.1973.

and stored Christensen's possessions in accordance with the Hoovers' directions; (2) the Hoovers and Slatten owed a duty to use reasonable care in the moving process and breached the duty which was the proximate result of the damage; and (3) no conversion of the missing items occurred. The Hoovers and Slatten thereafter appealed to the court of appeals.

The court of appeals set aside the judgment against the Hoovers concluding that, since Slatten was an independent contractor and not an agent or employee of the Hoovers, his negligence could not be imputed to them. The court of appeals also held that, as involuntary bailees, the Hoovers could not be independently liable in negligence for damage to Christensen's property since their conduct was not malicious, willful, or grossly negligent. The judgment against Slatten was affirmed by the court of appeals because, as a bailee for hire, a presumption of negligence arose against him when Christensen's goods were returned in a damaged condition. *Christensen v. Hoover, supra.*

## II.

The Colorado forcible entry and detainer statute provides a method by which a landlord may regain possession of rented premises from a tenant, through a writ of restitution, where the tenant is guilty of an unlawful detainer. *See* sections 13–40–104(d), 115(1), and 122, C.R.S.1973. The statute provides that the writ "shall be executed by the officer having [the writ]." Section 13–40–122, C.R.S.1973. None of the statutory provisions prescribe a procedure for the officer or sheriff to follow in taking possession of the premises from a tenant through the execution of a writ of restitution. It is the officer's duty, however, not only to remove the tenant, but also to remove the tenant's personal property and effects from the premises. Upon execution of the writ, the landlord obtains full possession of the premises. *See* section 13–40–115(1), C.R.S.1973.

■■ In requiring an "officer" to execute a writ of restitution, the forcible entry and detainer statute implicitly recognizes the desirability of having a neutral, detached, and disinterested person dispossess a tenant through eviction procedures. *See* sections 13–40–103 and 122, C.R.S.1973. Landlords are therefore precluded from independently exercising self-help evictions by the forcible entry and detainer statute. In carrying out the statutory duties, an officer or sheriff is subject to a minimum standard of care. The sheriff is only required to remove the tenant's chattels or property without damaging them more than is necessary to execute the writ, consistent with the natural consequences of removal. The sheriff has no duty to safeguard the tenant's possessions after a lawful eviction has occurred, even though he knows the tenant's belongings might be taken if they are left unattended. After the writ has been executed and the landlord has regained possession of the premises, the sheriff's statutory duty has ended, and no liability for subsequent damage to the tenant's property can attach.

■■ A landlord is not liable in damages or responsible for the manner in which a sheriff executes the writ or disposes of the tenant's property in the course of a lawful eviction. *See Iorio v. City of New York*, 96 Misc.2d 955, 410 N.Y.S.2d 195 (1978). After the tenancy has been lawfully terminated, the landlord is under no obligation, statutory or otherwise, to store or maintain the tenant's possessions. *See McCready v. Booth*, 398 So.2d 1000 (Fla.App.1981). However, if the landlord actively participates in removing the tenant's property from the premises, or if he assumes possession or control of the tenant's property after the writ of restitution has been executed, a bailment is created between the landlord and the tenant which may subject the landlord to liability for damage to the tenant's property. *See Ide v. Finn*, 196 A.D. 304, 187 N.Y.S. 202 (1921).

## III.

■■ A bailment is a delivery of personal property by one person to another in trust for a specific purpose, with an express

or implied contract that the property will be returned or accounted for when the specific purpose has been accomplished or when the bailor reclaims the property. *Mayer v. Sampson*, 157 Colo. 278, 402 P.2d 185 (1965); *Johnson v. Willey*, 142 Colo. 512, 351 P.2d 840 (1960); *Lewis v. People*, 114 Colo. 411, 166 P.2d 150 (1946). While the delivery of property may be constructive by simply taking possession, the creation of a bailment requires that possession and control over the subject property pass to the bailee. No agreement is necessary; a bailment may be created by operation of law. Thus, where a person comes into lawful possession of the personal property of another, even though there is no formal agreement between the property's owner and its possessor, the possessor will become a constructive bailee when justice so requires. *See Loomis v. Imperial Motors, Inc.*, 88 Idaho 74, 396 P.2d 467 (1964).

■ Here, a constructive bailment relationship was created between Christensen and the Hoovers and between Christensen and Slatten. *See Weisberg v. Loughridge*, 253 Cal.App.2d 416, 61 Cal.Rptr. 563 (1967); *Gray v. Whitmore*, 17 Cal.App.3d 1, 94 Cal. Rptr. 904 (1971). The Hoovers assumed possession and control of Christensen's property after the writ of restitution was executed, and retained control over the property while it was in storage. They hired and paid Slatten to remove Christensen's property from the leased premises and were present when it was being removed. In addition, the Hoovers accompanied Slatten to the storage facility which they rented, and waited at the storage facility until Slatten had unloaded and stored Christensen's property. Thereafter, the Hoovers refused to inform Christensen where her property was stored. Christensen was thereby denied both access to and possession of her personal property. Moreover, Slatten exercised control of Christensen's property by physically removing her possessions from the leased premises, transporting them to the storage facility, and unloading them into the storage shed.

■ A bailee's obligation runs to the property bailed, and not solely to the bailor. Once a bailment relationship has been established, the law imposes upon the bailee certain duties and obligations with respect to the bailed property in his possession. However, not all bailees are subject to the same liability for damage to the bailed property; the degree of care to which a particular bailee is held depends upon the nature and characterization of the bailment relationship.[2] *See Loomis v. Imperial Motors, Inc., supra.*

### A. Gratuitous Bailment

■ The bailment relationship created when the Hoovers took possession and control of Christensen's property was gratuitous since it was for the sole benefit of the bailor. *See Loomis v. Imperial Motors, Inc., supra.* The Hoovers could not rightfully hold Christensen's property for security purposes since the writ of restitution had been executed for possession only. The court of appeals concluded that the Hoovers were therefore liable in negligence for the damage to Christensen's property only if their conduct was malicious, willful, or grossly negligent. We do not agree.

■ The very nature of a bailment relationship implies a confidence and trust involving the exercise of some degree of care to protect the subject of the bailment from loss, damage, or destruction. *See, e.g., Johnson v. Lane*, 524 S.W.2d 361 (Tex. Civ.App.1975); *Gargano v. Venezio*, 38 N.J. Super. 127, 118 A.2d 78 (1955); *Kegan v. Park Bank of St. Joseph*, 320 Mo. 623, 8 S.W.2d 858 (1928). In our view, even a gratuitous bailee must exercise reasonable care to protect the bailor's property, *i.e.*, that which a person of common prudence would use under the circumstances. *Accord, Koennecke v. Waxwing Cedar Prod-*

---

**2.** Bailments are now generally classified into three categories: (1) for the sole benefit of the bailor; (2) for the sole benefit of the bailee, and; (3) for the mutual benefit of both the bailee and the bailor. *See R. Brown, The Law of Personal Property* § 80 (2d ed. 1955); 8 Am.Jur.2d *Bailments* § 17 (1980).

*ucts, Ltd.,* 273 Or. 639, 543 P.2d 669 (1975); *Kegan v. Park Bank of St. Joseph, supra.* Consequently, where a landlord has assumed control and possession of a tenant's personal property after a writ of restitution has been executed, the landlord is liable to the tenant for ordinary negligence for failing to use reasonable care, considering all the circumstances, to prevent damage to the tenant's property.

▆ We agree with the court of appeals' statement that no evidence was presented at trial bearing on the negligence of the Hoovers in removing, transporting, or storing Christensen's property. Admittedly, they took no active role in any part of the moving process, but employed a professional mover and merely stood by until Slatten had moved Christensen's property into the storage shed. Since the Hoovers had no reason to believe that Slatten would act irresponsibly or negligently, they cannot be held negligent for breaching a duty of care to protect the tenant's possessions from damage or destruction. Accordingly, no basis exists for a determination that the Hoovers are independently liable in negligence for the damage which occurred to Christensen's property during its removal from the leased premises and its subsequent storage.[3]

### B. *Bailment For Mutual Benefit*

▆ The constructive bailment relationship created between Christensen and Slatten, however, was not gratuitous. Unlike the Hoovers, Slatten received compensation for the moving and storage process;

he was therefore a bailee for hire and the bailment relationship was one for mutual benefit.[4] In such a relationship, the bailor is aided by a presumption of negligence in a suit to recover for damages to the bailor's property if the property cannot be accounted for or returned in an undamaged condition. In *Hipps v. Hennig,* 167 Colo. 358, 447 P.2d 700 (1968), we stated:

> "[T]he rule is clear in Colorado that once goods are delivered in good condition to a [bailee for hire] who accepts them, but cannot redeliver them, or can redeliver them only in a damaged condition, a presumption of negligence on the part of the [bailee for hire] arises, and the burden of going forward with evidence to rebut that presumption rests on the [bailee for hire]."

*See also Johnson v. Willey,* 142 Colo. 512, 351 P.2d 840 (1960); *Chabot v. Williams Chevrolet Co.,* 30 Colo.App. 277, 491 P.2d 612 (1971); *Keefe v. Bekins Van & Storage Co.,* 36 Colo.App. 382, 540 P.2d 1132 (1975). Although the Hoovers are not independently liable in negligence, our determination does not affect our conclusion regarding the liability of Slatten, as a bailee for hire, for the damage to Christensen's property.

The evidence as to the condition of the property prior to the removal and storage by Slatten, and subsequent thereto, was disputed at trial. However, Christensen presented testimony and photographic exhibits which established the poor condition of the property when it was removed from storage, as compared to the condition of the

3. Christensen's complaint only alleged conversion of certain items of property which were missing at the time she recovered her possessions from the storage facility. The trial court found that no conversion of the property occurred. The complaint did not allege that the exercise of dominion over Christensen's property during the time it was in the storage facility constituted conversion, and the issue was not raised on appeal. Accordingly, the issue of the Hoovers' liability for conversion of Christensen's property is not before us.

4. We recognize that Slatten was paid for his services by the Hoovers (landlord) and did not receive a direct benefit from Christensen (tenant). However, a bailment for mutual benefit

between the tenant and Slatten (mover) is not defeated because the relationship was constructive, *i.e.,* without actual agreement between the parties. To determine the applicable standard of care once a bailment has been created, we must look to whether a benefit is received in connection with the bailment. In making such a determination, we must focus on the existence of the benefit and not its source. *See* note 2, *supra.* Under the circumstances, we conclude that the constructive bailment relationship between the tenant and the mover was one for mutual benefit. *See generally* R. Brown, *The Law of Personal Property* §§ 81, 91 (2d ed. 1955); 8 Am.Jur.2d *Bailments* § 259 *et seq.* (1980).

property when she left it in the leased premises. In addition, she presented evidence of the monetary value of the property damage. There was sufficient evidence in the record to support the finding of the trial court that the damage occurred during the process of removing, transporting, and storing Christensen's possessions.

■ Once Christensen established the fact that her property was returned in a damaged condition, the presumption arose that the damage occurred as a result of Slatten's negligence. Slatten then had the burden of rebutting the presumption to avoid liability. *Hipps v. Hennig, supra*; *Chabot v. Williams Chevrolet Co., supra.* Slatten did not rebut the presumption by showing how the damage occurred or by showing that he exercised reasonable care during the moving process. He merely denied that he had caused any damage. Such a denial is insufficient, in itself, to overcome the presumption of negligence and, therefore, the judgment of the court of appeals that Slatten was negligent and independently liable for the damage to Christensen's possessions was proper.

## IV.

In our view, the court of appeals erred by substituting its judgment for the trial court's finding that an agency relationship existed between the Hoovers and Slatten. The trial court held that, under the principles of agency law, the Hoovers and Slatten were jointly and severally liable for the damage to Christensen's property. The court of appeals reversed the trial court and concluded that Slatten was an independent contractor and that his negligence was therefore not imputable to the Hoovers under the doctrine of *respondeat superior.* We disagree with the court of appeals.

No issue of Slatten's independent contractor status was framed by the pleadings in this case. At no time during the trial did the Hoovers either affirmatively deny that an agency relationship existed between them and Slatten, or affirmatively assert the defense that Slatten was an independent contractor. Even after the trial had ended, the Hoovers failed to assert the defense of independent contractor in their motion for a new trial. It is obvious from the record before us that the unpleaded defense of independent contractor appears as an afterthought following the entry of judgment by the trial court.

■ The denial of an agency relationship by asserting independent contractor status is a defense which avoids the imposition of liability based upon the otherwise applicable principles of agency law. Defenses and objections not presented at trial are deemed waived and cannot be raised for the first time on appeal. *Kimmel v. Ratty*, 168 Colo. 431, 451 P.2d 751 (1969); *Dreiling Motor Co. v. Shultz*, 168 Colo. 59, 450 P.2d 70 (1969); *Maxey v. Jefferson County School District No. R–1*, 158 Colo. 583, 408 P.2d 970 (1965). *See also* C.R.C.P. 12(b).

■ The court of appeals therefore erred in relying on the defense of independent contractor, which was raised for the first time on appeal, to reverse the finding of the trial court in this case. Since no defense was presented at trial, the trial judge had authority and the discretion to impose liability on the Hoovers for the negligence of Slatten under agency principles. *See Masey v. Jefferson County School District, supra.*

Accordingly, we affirm in part and reverse in part, and remand the case to the court of appeals with directions to reinstate the judgment against the Hoovers and Slatten, jointly and severally, for the damage to Christensen's property.