775 P.2d 651

**Glen TRAUTMAN and Marilyn Trautman, husband and wife, Plaintiffs–Respondents,**

v.

**Don G. HILL; Donald Wright and LuNetta Wright, husband and wife, Defendants–Appellants.**

No. 16874.

Court of Appeals of Idaho.

June 8, 1989.

Rehearing Denied June 8, 1989.

John Tait of Keeton, Tait & Petrie, Lewiston, for defendants-appellants.

James W. Givens, Lewiston, for plaintiffs-respondents.

## SUBSTITUTE OPINION

The Court's prior opinion, dated November 3, 1988, is hereby withdrawn.

SWANSTROM, Judge.

In this appeal we are asked to determine whether a rent escalator clause in a commercial lease is valid and enforceable. The district court held that it was. We agree and affirm that ruling but we vacate the judgment and remand for modification of the judgment.

In August 1978 Glen and Marilyn Trautman entered into a lease agreement with Don Hill and Donald and LuNetta Wright. Under the agreement the Trautmans constructed and leased to the Wrights and Hill a building in Lewiston, Idaho, for use by the Wrights in operation of a business known as "Don's Burger Den." For simplicity, we will refer to the parties using the singular names Trautman and Wright. The lease was for a ten-year term with renewal rights. It stated a monthly "base" rental with a rent escalator clause which provided for a rent adjustment every two years after the first year. The escalator clause was linked to changes in the Consumer Price Index (CPI) published by the Bureau of Labor Statistics, United States Department of Labor. Adjustments in the rent were calculated at Trautman's request by an accountant during the course of the lease in September 1979, 1981, and 1983. Wright paid these amounts as calculated until February 1985 when he challenged them, contending that they had been miscalculated and that he had overpaid the required rent. As a result, Trautman had the rent recalculated for each of the earlier terms by a second accountant. This accountant determined that the prior rental payments were incorrect. However, his new figures showed a payment *deficiency* totaling $3,207.72. The parties could not resolve this dispute. Trautman filed suit in May 1985 to recover the difference between the rent paid and the amount he claimed was due under the newly calculated rental figures. Wright counterclaimed, asking that the escalator clause be declared unenforceable and seeking recovery of all rental paid in excess of the base rent during the previous six years.

In September 1985 the next two-year adjustment was calculated. Wright protested the new calculation and continued to pay the amount originally calculated for the 1983–85 rental term. By the time trial was held in July 1986 the dispute involved both past and future payments above the base amounts specified in the lease. Wright attempted to persuade the court that he was liable for the base rental amount only. Wright argued that the two different calculations of the escalated rent showed the existence of either an ambiguity in the contract language or a mistake of fact in the use of the CPI. The district court was not persuaded by Wright's arguments. While finding Trautman's recalculated rental computations to be correct, the court awarded only the amount due following the 1985 adjustment, a total of $3,581.48, and not those amounts Trautman claimed were still due from the earlier period. Wright has appealed. Trautman did not cross-appeal to challenge the denial of part of his claim.

Wright presents two arguments on appeal. The first is that the district court erred in not finding that the contract reflected a unilateral mistake by Trautman. Wright contends that the language in the lease identifies a non-existent index and provides no enforceable basis for the calculation of any rental adjustments. Wright also argues that the evidence does not support the court's findings upholding the rent adjustment clause or the amount awarded. We affirm in part, vacate in part, and remand.

I

Wright first contends that the district court erred in failing to find that the rent escalator clause was ineffective and legally unenforceable because of Trautman's unilateral mistake. The court made no findings on the question of the existence of a mistake in the contract. The court, when sitting as the trier of fact, is charged with the duty of preparing findings of fact in support of its decision. I.R.C.P. 52(a). The absence of findings may be disregarded by the appellate court *only* where the record is clear and yields an obvious answer to the relevant question. *Pope v. Intermountain Gas Co.*, 103 Idaho 217, 646 P.2d 988 (1982). If the record will not provide an answer to the question, we must set aside the judgment and remand for additional findings, unless we determine that the absence of such findings would not affect the judgment entered. *Id.* This result is mandated as it is improper for the appellate court to make these findings of

fact and substitute its judgment for that of a trial court. *Sherry v. Sherry,* 111 Idaho 185, 722 P.2d 494 (Ct.App.1986).

■ The lease between Wright and Trautman contained a rent escalator provision providing for rent increases over the term of the agreement. Wright contends that as a result of Trautman's unilateral mistake the language in the lease fails to accomplish this result. The pertinent language is as follows:

6. *RENTAL AGREEMENT:* The monthly rental specified and hereinbefore provided shall be subject to adjustment in the manner as follows:

At the commencement of the second year of the term hereof, and each two (2) years thereafter throughout the remainder of the term and any extensions thereof resulting from the options to renew as hereinafter provided, *the Consumer Price Index for all items, as published by the United States Department of Labor, Bureau of Labor Statistics, for the full calendar [sic] quarter* immediately preceding such adjustment date shall be compared with said index for the full calendar quarter immediately prior to the commencement of the term hereof. In the event said index as of such adjustment date is higher than the index for the full calendar quarter immediately preceding the commencement of the term hereof, the monthly rental for the ensuing year until the next rental adjustment shall be increased by multiplying the rental set forth in paragraph 5 hereof by a fraction, the numerator of which is the index for the full calendar quarter preceding the adjustment date and the·denominator of which is the index for the full calendar quarter preceding the commencement of the term hereof. [Emphasis added.]

Wright contends that the index described above did not exist on or after the date the lease was signed. Therefore, he argues this Court should follow the result reached in *Seattle–First National Bank v. Earl,* 17 Wash.App. 830, 565 P.2d 1215 (1977), in finding the existence of a unilateral mistake in the contract. In *Seattle–First* a dispute arose over the amount due under a rent escalator clause which was tied to a cost-of-living index. The index named in the lease was the "cost-of-living figures for the City of Spokane, issued by the United States Bureau of Labor Statistics." Several years after the signing of the lease, it was discovered that the United States Bureau of Labor statistics did not publish an index for the City of Spokane.

The Washington Court of Appeals held that there was no basis for reformation of the lease. The lease was determined to accurately reflect the agreement of the parties and was a complete integration of the terms mutually agreed upon. The language of the lease was deemed not to be ambiguous and the parties were held to the language of the agreement. The court did, however, find the presumption that a cost-of-living index existed for the City of Spokane to be a unilateral mistake. The mistake was attributed to the lessors since the lessees had no independent knowledge regarding the index and had accepted the lessors' analysis and preparation of the lease and its terms. The court concluded that it would not invoke its equitable powers to rescind the contract. Without the remedy of reformation or rescission, the court was compelled to uphold the lease and the original rent payments, but due to the unilateral mistake, the escalator clause was unenforceable.

Wright assets that, as in *Seattle–First,* the CPI in the lease is "non-existent" and constitutes a unilateral mistake which prevents enforcement of the rent escalator provision of the lease. The rent escalator language in the lease describes the index to be used as "the Consumer Price Index for all items." The lease language also specifies the use of *quarterly* index numbers in the rent adjustment calculations. Testimony at trial established that Trautman's two accountants used instead an index entitled "the Consumer Price Index for All Urban Consumers." The index used also lacked a quarterly index number. Wright contends that the index described in the lease, if it ever existed, is now "non-existent;" that the CPI index has been replaced with a pair

of monthly indexes. As a result, rather than using the index specifically named in the lease, the accountants were instead required to interpret the language of the lease and, first, choose a substitute index and, second, supply a quarterly index number.

█ The testimony and evidence presented do not entirely reveal an answer to Wright's contention that the specified index is non-existent. The sources necessary for a determination, however, are not beyond the scope of our review. This Court may take judicial notice of adjudicative facts, those not subject to reasonable dispute in that they are either generally known within the territorial jurisdiction of the trial court or are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. I.R.E. 201. This notice may be taken at any stage in the proceeding, at the trial or appellate level and extends to official reports of the federal government, including those we have referred to published by the Bureau of Labor Statistics, United States Department of Labor. *See State ex rel. Helm v. Kramer*, 82 Wash.2d 307, 510 P.2d 1110 (1973); *Washakie County School Dist. No. 1 v. Herschler*, 606 P.2d 310 (Wyo.1980).

The CPI is a periodic statistical measure, undertaken by the United States Department of Labor, of the average change in prices in a fixed market basket of goods. The CPI, as a whole, entails approximately thirty separate indexes. Since its inception during World War I the index has undergone several revisions. The "general summary" or comprehensive index represents the broadest of all of the separate indexes in the CPI. Among the additional indexes are ones which cover particular geographic regions, metropolitan areas and population-size groups. However, the comprehensive index stands as the primary listing in the group of indexes known together as the CPI. Prior to 1978 the index was entitled "The Consumer Price Index—U.S. City Average—General Summary and Groups, Subgroups, and Selected Items." The published index contained under its general summary section an all-item index number and several separate item divisions, such as food, housing and services. The index, as a survey, gathered data from a specified population group. The survey sample of the index at this time was comprised of, and therefore represented, an index population of urban wage earners and clerical workers. The survey was purported to represent about one-half of the urban population and under forty-five percent of the total population. *See* BUREAU OF LABOR STATISTICS, U.S. DEPT. OF LABOR, RPT. NO. 517, THE CONSUMER PRICE INDEX, CONCEPTS AND CONTENT OVER THE YEARS (1978) (hereinafter CONCEPTS AND CONTENT).

In 1978, the index went through a revision, changing the single index to two indexes. These two indexes were entitled "the Consumer Price Index for all Urban Consumers and [the] Revised Consumer Price Index for Urban Wage Earners and Clerical Workers, U.S. City Average—General Summary and Groups, Subgroups, and Selected Items." The first new index is one representing all urban consumers—a purported eighty percent of the population—and the second is a revised index for urban wage earners and clerical workers. The second index still represents the same population group as the original index—one-half of the urban population and under forty-five percent of the total population. This 1978 revision reflects an effort to update certain aspects of the index such as sampling, spending categories and an expansion of the geographic coverage. *See* CONCEPTS AND CONTENT, *supra;* and BUREAU OF LABOR STATISTICS, U.S. DEPT. OF LABOR, CONSUMER PRICE INDEX REVISION—1978 (1978).

Accordingly, we reject Wright's contention that the index named in the lease is non-existent. The argument has no basis apart from the change in the title of the comprehensive index. The 1978 revision did add a new index under the comprehensive heading, the "All Urban Consumers" index. The revision also changed the overall title of this index to reflect the addition of this new separate listing and the minor changes in the old comprehensive index.

The 1978 revision did not, however, eliminate the comprehensive index previously used. The old index was an urban wage earners' and clerical workers' index. The new comprehensive index still contains one listing which presents a revised urban wage earners' and clerical workers' index. This revised form still contains the all-item comprehensive index number upon which the calculation of the rent escalation can be based.[1]

We acknowledge that the figures of the revised urban wage earners and clerical workers index are not identical to those of the earlier index. A comparison by the Bureau of Labor Statistics of the old and the revised indexes for six months after the revision while both versions were reported shows a slight variation between the two. BUREAU OF LABOR STATISTICS, U.S. DEPT. OF LABOR, CPI DETAILED REPORT, JUNE 1978 (1978). This, of course, is the obvious result of the modifications made in the sampling groups and spending categories comprising the revised index. The very nature of the revision precludes an exact duplication of figures between the old and revised index. However, this lack of duplication should not preclude the application of the revised index to the lease at issue here. The revision did not change the underlying methodology of the urban wage earners and clerical workers index. Items such as the represented population group and calculation formula remained the same. We hold that this continuation of the index, albeit in a revised form, satisfies the requirements for enforcement of the escalator clause.

Wright also argues that the lease's specification of an index number "for a full calendar quarter" cannot be met by the CPI in existence after 1978. We are not persuaded by this argument. The language in the lease does specifically call for a quarterly index number. When the parties entered into the lease, the reporting frequency of the comprehensive index was monthly and not quarterly. A quarterly index number was produced at that time only for the narrow regional, metropolitan and population-size group indexes. The lack of a quarterly number for the comprehensive index does not, however, render the index number to be used in the rental calculation non-existent. As we explain later, one permissible way a quarterly index number can be derived readily is by averaging the monthly index numbers of three consecutive months. This simple calculation will accurately and fairly provide the required "quarterly" number for the adjustment calculation, provided that the method is consistently followed. Both ac-

1. An example of the index before and after the 1978 revision is found by comparing the index format as used in the Department of Labor, Monthly Labor Review for two pertinent months. The index appeared as follows before the revision:

**23. Consumer Price Index—U.S. city average—general summary and groups, subgroups, and selected items**
[1967 = 100 unless otherwise specified]

| General summary | Annual average 1977 | 1976 Dec. | 1977 | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Jan. | Feb. | Mar. | Apr. | May | June | July | Aug. | Sept. | Oct. | Nov. | Dec. |
| All items | 181 5 | 174 3 | 175 3 | 177 1 | 178 2 | 179 6 | 180 6 | 181 8 | 182 6 | 183 3 | 184 0 | 184 5 | 185 4 | 186 1 |

and after the revision:

**23. Consumer Price Index for All Urban Consumers and revised CPI for Urban Wage Earners and Clerical Workers, U.S. city average—general summary and groups, subgroups, and selected items**
[1967 = 100 unless otherwise specified]

| General summary | All Urban Consumers | | | | | | | Urban Wage Earners and Clerical Workers (revised) | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1977 | | | | | | 1978 | 1977 | | | | | | 1978 |
| | Jan. | Aug. | Sept. | Oct. | Nov. | Dec. | Jan. | Jan. | Aug. | Sept. | Oct. | Nov. | Dec. | Jan. |
| All items | 175 3 | 183 3 | 184 0 | 184 5 | 185 4 | 186 1 | 187 2 | 175 3 | 183 3 | 184 0 | 184 5 | 185 4 | 186 1 | 187 1 |

Two subsequent cosmetic revisions should also be noted. The term "revised" was removed from the Urban Wage Earners and Clerical Workers Index in 1983. In 1987 a new format appeared, displaying the two indexes sequential-

countants employed by Trautman used this averaging procedure. We uphold it.

Therefore, we decline to apply the rule set forth in *Seattle–First*. Our review of the record and material within the scope of judicial notice supports a conclusion that the index named in the lease still exists. Wright has not established that the rental adjustment language in the lease constitutes a material mistake requiring nullification of the escalator clause. The "mistake" that occurred here lies not in the formation of the parties' contract but in the failure to express that agreement in a completely clear and correct manner. If any remedy is required, minor reformation of language is more appropriate than excision of the language, as less damage will be done to the parties' overall agreement concerning rental payments. Application of the "revised" urban wage earners' and clerical workers' index would effectively utilize the same index specified in the lease. Such use would also be consistent with the following agreement of the parties, as expressed in the lease:

> In the event said index is discontinued or revised during the term of this lease, such other governmental index or computation with which it is replaced shall be used in order to obtain substantially the same result that would be obtained if said present index had not been discontinued or revised.

We conclude that the failure of the district court to make a finding on the question of the existence of a mistake does not affect the judgment entered and does not constitute reversible error.

## II

Wright also contends that the district court's findings regarding the escalator clause and rental calculations are unsupported by the evidence. On appeal, a finding of fact will not be disturbed absent a showing that the finding was clearly erroneous. *Loomis, Inc. v. Cudahy*, 104 Idaho 106, 656 P.2d 1359 (1982); *DeMarco v. Stewart*, 107 Idaho 555, 691 P.2d 801 (Ct. App.1984).

In the district court's findings, the court determined that the term "full calendar quarter" carried a specific meaning in the lease. Due in part to the unavailability of a quarterly index number, the term was found to mean a group of three consecutive months starting, in turn, with the months of January, April, July, and October. Wright contends that the language in the lease was inadequate by itself to accurately determine which months comprise the appropriate calendar quarter for the adjustment calculation.

■ The lease language calls for the "full calendar quarter immediately preceding [the] adjustment date." The record shows that each of Trautman's accountants used a different set of months in his calculations. Trautman's first accountant testified that his choice of months was based on the availability of the published information. At the time of his calculations, the most current information he had available was from the months of February, March and April. However, using these months is not consistent with the lease requirement for using the index "for the full calendar quarter" immediately prior to the commencement of the term of the lease and "the index for the full calendar quarter preceding each adjustment date." The term of the lease started September 5, 1978. September 5 of each odd-numbered year was also the "adjustment date." Accordingly, the calendar quarter comprising April, May and June was to be used in each instance. In his written opinion, Judge Maynard correctly held that the phrase "full calendar quarter" could mean only a quarter of a year commencing with the months of January, April, July or October. The second accountant employed by Trautman did use the calendar quarter of April, May and June in his calculations. As we have indicated, the lease unambiguously pinpoints this calendar quarter for calculating periodic rental increases or decreases. The district court correctly elected to follow the method applied by Trautman's second accountant. This calculation used the

ly rather than in a side-by-side format as illus-   trated.

most recent calendar quarter for which data had been published—April, May and June. This determination is supported by the record and is not clearly erroneous.

Finally, we turn to Wright's contention that Trautman's rental calculations, and the damage award based thereon, are incorrect. With this contention we agree. On remand damages must be recalculated and the judgment modified accordingly. The record disclosed that Trautman's accountants utilized in their adjustment calculations the "All Urban Consumers" index. The accountants' adoption of this index was in error. As we have discussed above, the "Revised Urban Wage Earners and Clerical Workers" index is the continuation of the index named in the lease. Because the wrong index was used, the evidence presented at trial does not support the rental computations adopted by the district court.

We partially vacate the judgment and remand for redetermination of damages in accordance with this opinion. The court may take additional evidence necessary to determine the unpaid rental due. While the district court awarded only the amount due following the 1985 adjustment, we conclude that Wright raised a sufficient challenge to the district court's findings to warrant a recalculation, on remand, of the escalated rent for all of the adjustment periods of the lease.[2] We direct the district court to make new findings on the rental computations using the identified index.

### III

Wright has also challenged the district court's award of attorney fees. The district court made the award pursuant to a clause in the lease which allows the court to award reasonable attorney fees in any action where either party to the lease successfully "enforce[s] any of the provisions [of the lease]...." It is clear that Traut-

man substantially prevailed in the trial court in his action to enforce the rent escalator clause, even though the trial court did not award all of the rental claimed by Trautman.

We have vacated the judgment as to the amount of damages awarded and we have remanded the case to the district court for recalculation of those damages. As a consequence, the district court's award of attorney fees under the contract is also vacated. On remand, after the ultimate damage award is decided, the district court shall redetermine, in its sound discretion, whether Trautman has prevailed sufficiently to receive attorney fees under the contract. If the court so finds, Trautman must also be deemed to have prevailed in this appeal. In that event, the district court shall include in the attorney fee award a reasonable figure for the appeal.

Costs to respondents Trautman.

WALTERS, C.J., and BURNETT, J., concur.

---

2. Specifically, Wright has argued there is "no basis for this court to uphold the finding of the trial court as to the rental calculations for all periods prior to the 1985 rental adjustment." We agree. Judge Maynard's statement that "[t]he parties relied upon the lease and adjusted the rental thereon until September of 1985"

does not reveal a basis for avoiding recalculation of rental paid before 1985. Unless there are reasons not disclosed by the present record on appeal, we must agree with Wright that "the remand should also be for the [re]determination of the rent prior to 1985...."