910 P.2d 801

### Alan C. WHITEHOUSE and Sandy Whitehouse, husband and wife, Plaintiffs–Respondents,

v.

### Dennis LANGE, Defendant–Appellant,

and

### Carol Lange, Defendant–Respondent.

No. 21131.

Court of Appeals of Idaho.

Jan. 30, 1996.

Gary A. Finney, Sandpoint, for appellant.

Stanley D. Moore, Coeur D'Alene, for respondents Whitehouse.

LANSING, Judge.

This is an appeal by Dennis Lange from a judgment in favor of Alan and Sandy Whitehouse for breach of warranty in the sale of a broodmare. After considering the appellant's points of alleged error, we affirm the judgment entered by the district court.

## I.

### FACTS

Dennis and Carol Lange owned and operated a horse ranch and had been "in the Morgan horse business" since 1978. In the spring of 1990, the Whitehouses decided to enter the Morgan horse breeding business. They became interested in perpetuating the bloodlines of horses then owned by the Lang-

es, including a mare named Revelation Prophecy. An agreement was reached for the Whitehouses to purchase Revelation Prophecy for $15,000 and to purchase also a stallion and a mare that was the offspring of the stallion and Revelation Prophecy. Alan Whitehouse explained to Lange that the Whitehouses were purchasing these horses for breeding purposes and intended to start a horse breeding business. Although the Whitehouses had previously owned horses, they had no prior experience in horse breeding.

At the time of the contract, both parties thought that Revelation Prophecy was with foal. When the horses were delivered, however, Mr. Lange advised the Whitehouses that the mare "showed" to the stallion while being transported for delivery, an indication that the mare was not with foal, but rather, was in heat. As a result, the Whitehouses engaged a veterinarian, Dr. McGaffey, to examine the mare and determine whether she was pregnant. Dr. McGaffey determined that the mare was not pregnant. Consequently, the parties renegotiated the price of Revelation Prophecy down to $10,000.

The Whitehouses thereafter attempted to breed the mare, but she did not conceive. A subsequent examination of the mare revealed that she had a susceptibility to a uterine infection that prevents conception and is precipitated by exposure to bacteria in a stallion's ejaculate.

The Whitehouses twice gave the Langes notice of revocation of their acceptance of Revelation Prophecy, but the Langes refused to refund the purchase price. Consequently, the Whitehouses filed a complaint against the Langes seeking rescission of the contract or, in the alternative, damages for breach of warranty.

After the case was tried to the district court, the judge entered findings of fact and conclusions of law in which he found that the Langes had made no express warranties and did not misrepresent the condition of the mare. The court also found that the Whitehouses did not rely on the Langes for "selection" of the mare and therefore, no implied warranty of fitness for a particular purpose arose under I.C. § 28-2-315. No findings or conclusions were made on the issue of an implied warranty of merchantability. The Whitehouses then moved for amendment of the judgment pursuant to I.R.C.P. 59(e), again asserting that they had proved a right to recover for breach of express and implied warranties. Following a hearing on this motion, the district court altered its decision. Amended findings and conclusions were entered by which the court found that, although there had been no express warranty or misrepresentation made by Lange, the implied warranties of merchantability and of fitness for a particular purpose did arise, and that the Langes had breached both. Judgment was then entered awarding the Whitehouses damages for the difference between the value of the mare as warranted and her actual value, together with incidental damages for breeding and veterinary expenses.

Dennis Lange appeals the judgment, alleging numerous errors in the district court's decision.[1]

## II.

## ANALYSIS

### A. Adequacy of the Complaint to State a Cause of Action for Breach of the Implied Warranty of Fitness for a Particular Purpose

The trial court held Lange liable for breach of both the implied warranty of fitness for a particular purpose, I.C. § 28-2-315, and the implied warranty of merchantability, I.C. § 28-2-314. Lange challenges the court's findings and conclusions as to both of these theories. We will examine first Lange's claims of error with respect to the implied warranty of fitness, recognizing that if we affirm the district court's award of damages under that theory, it will be unnecessary to consider Lange's assignments of error regarding the implied warranty of merchantability.

Lange first asserts that it was error for the district court to consider the implied warranty of fitness as a potential basis for

1. Carol Lange, who is now divorced from Dennis Lange, did not appeal.

liability because a claim for breach of this implied warranty was neither pleaded by the Whitehouses nor tried by the consent of the parties. Lange argues that the Whitehouses' complaint alleges causes of action for breach of express warranty, but not for breach of any implied warranty.

■ The sufficiency of the complaint to state a particular cause of action must be assessed under the standards of I.R.C.P. 8(a)(1)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." The requirement of this rule is satisfied if the complaint contains "a simple concise and direct statement fairly apprising the defendants of claims and grounds upon which the claims rest." *Myers v. A.O. Smith Harvestore Products, Inc.,* 114 Idaho 432, 439, 757 P.2d 695, 702 (Ct.App.1988). The purpose of a complaint is to inform the defendant of the material facts upon which the plaintiff rests the action. *Clark v. Olsen,* 110 Idaho 323, 325, 715 P.2d 993, 995 (1986).

■ The circumstances under which an implied warranty of fitness for particular purpose will arise are specified in I.C. § 28–2–315:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

The Whitehouses' complaint neither cites this statute nor uses the term "implied warranty." Although these omissions are not commendable as a matter of pleading practice, they are not fatal to a claim arising under § 28–2–315 if the facts underlying such a cause of action are otherwise adequately pleaded. See *Greenwade v. Idaho State Tax Commission,* 119 Idaho 501, 504, 808 P.2d 420, 423 (Ct.App.1991).

■ The Whitehouses' complaint, captioned "Complaint for Rescission of Contract or in the Alternative, for Breach of Warranty and Damages Due," alleges in part:

> Revelation Prophecy was purchased for the express and only purpose of breeding and getting foals. At the time of purchase, defendants were informed and knew that plaintiffs were purchasing the animal for such purpose.... [D]efendants represented, promised, and warranted to plaintiffs that the animal ... was a good breeder and sure foal getter.... [R]elying on the ... warranties of defendants, plaintiffs purchased Revelation Prophecy ... Revelation Prophecy was ... not fit as a broodmare at the time of purchase.

These allegations are sufficient to present a claim for breach of the implied warranty of fitness for a particular purpose.[2]

**B. Court's Findings and Conclusions Regarding the Implied Warranty of Fitness**

In its original findings and conclusions, the trial judge found that because the Whitehouses *selected* Revelation Prophecy for her bloodline, the requirements of I.C. § 28–2–315 were not met. In reviewing that ruling upon the Whitehouses' motion to amend the judgment, the trial court modified its determination and found that the Whitehouses' reliance on Lange to *furnish* a proper broodmare satisfied the requirements of I.C. § 28–2–315.

■ By terms of I.C. § 28–2–315, an implied warranty of fitness will not arise unless the buyer "is relying on the seller's skill or judgment to *select or furnish* suitable goods." (Emphasis added.) The trial court's amended findings and conclusions addressed this reliance element as follows:

> Plaintiffs have failed to prove they relied upon the judgment and skill of Defendants for the actual selection of the specific horses purchased. However, the Plaintiffs did rely on Dennis Lange to furnish a suitable breeding mare in the sale of Revelation Prophecy. Therefore, an implied warranty

---

2. Moreover, the record belies Lange's contention that he was unaware that this cause of action was among the claims to be addressed at trial.

In his closing argument to the trial court, Lange's counsel specifically discussed the implied warranty of fitness for a particular purpose.

arises under I.C. § 28–2–315 and the Langes breached such warranty by furnishing a mare that was not suitable for breeding.

The trial court was correct in recognizing that buyers may rely upon a seller to "furnish" goods suitable for a particular purpose even though the individual unit purchased is "selected" by the buyer. As one commentator explains:

> [The seller] must have reason to know two things: first, the particular purpose for which the buyer requires the goods; *and* second, that the buyer is relying on the seller's skill or judgment to select or to furnish suitable goods. These two requirements are connected by an "and"; both must exist before the warranty will be implied. It is not enough that the seller has reason to know the use to which the buyer intends to put the goods unless the seller also has reason to know that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods. On the other hand, the reliance factors are in the disjunctive; the second requirement is satisfied on the basis of the seller's skill *or* judgment to select *or* furnish suitable goods. The seller need not both select and furnish; either will suffice.

Robert J. Nordstrom, HANDBOOK OF THE LAW OF SALES § 78, at 243–44 (1970). A California court addressed this issue in a case involving the sale of a hereford bull as a herd sire. *Willig v. Brethauer*, 127 Cal.App.2d 650, 274 P.2d 202 (1954). In that case, the bull proved to be temperamentally and physiologically unfit for breeding. The court found that an implied warranty of fitness for a particular purpose had been breached even though the buyer had selected this bull from among several in the seller's herd. The court stated:

> [A]ppellant was engaged in the business of furnishing herd sires for the propagation of purebred Hereford cattle. He knew that respondent wanted an animal solely for that purpose.

. . . .

But appellant says there was no reliance upon the skill or knowledge of the seller and in support of this contention points to testimony that respondent and his herd manager went to appellant's ranch to view the animals he had on sale as herd sires, examined a number of them, and, as respondent himself testified, selected one from the number examined. But of course it is not likely, and was not proven, that a visual examination of the animal could have detected any existing unfitness, unless the visual physical attributes of the animal might have given warning. Such was not the case here, however. The fact that the animal was inspected before purchase and that respondent testified he had selected the bull from among several examined affords no reason to say that the trial court could not still infer that respondent relied upon the seller to deliver to him a fit and qualified animal.

127 Cal.App.2d 650, 274 P.2d at 203–04.

■ We agree with the California court's analysis. The fact that the Whitehouses selected the horse they wanted based upon bloodline considerations does not preclude reliance on Lange to furnish a horse suitable for breeding. It is evident that the Whitehouses' interest in Revelation Prophecy's genetic characteristics would not have led them to purchase that mare if they had known she was unable to reproduce. Therefore, we perceive no inconsistency in the district court's finding that the Whitehouses did not rely upon Lange to select the specific horse, but did rely upon him to furnish a mare suitable for the particular purpose of breeding.

■ Lange contends, however, that the findings are insufficient to support a conclusion that an implied warranty of fitness arose because the trial court's finding states that the Whitehouses "did rely on Dennis Lange to furnish . . ." rather than stating that they relied on Dennis Lange's *skill or judgment* to furnish a suitable breeding mare. We think it apparent from the context of this finding and from the court's findings and conclusions as a whole that the trial court recognized that I.C. § 28–2–315 requires reliance on the seller's "skill or judgment" and that the trial court implicitly found such reliance here. On appellate review, the trial

court's findings of fact will be liberally construed in favor of the judgment entered. *Abbott v. Nampa School District No. 131,* 119 Idaho 544, 547, 808 P.2d 1289, 1292 (1991); *Rueth v. State,* 103 Idaho 74, 77, 644 P.2d 1333, 1336 (1982). The omission of the words "skill or judgment" in the district court's findings does not compel reversal of the judgment as urged by Lange.

## C. Alleged Exclusion of Warranties by a Veterinarian's Examination

Lange next asserts that any implied warranty was excluded by Dr. McGaffey's examination of Revelation Prophecy shortly after the mare's delivery to the Whitehouses. He invokes I.C. § 28–2–316(3)(b) which provides: "[W]hen the buyer before entering into the contract has examined the goods ... as fully as he desired ... there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him." Lange's contention is without merit. Under the clear statutory language, an examination will be effective to exclude warranties only if it occurred before the contract was made and only if it is of such a nature that it ought to reveal the defects of which the buyer subsequently complains. Here, Dr. McGaffey's examination of Revelation Prophecy occurred after the contract had been formed and the mare had been delivered. Therefore, it could not affect the existence of an implied warranty.

Further, Dr. McGaffey's examination was only for the purpose of determining whether the mare was with foal. There is no evidence in the record that such a pregnancy examination ought to have revealed the mare's susceptibility to uterine infections that occur only upon breeding. To the contrary, there was evidence that this susceptibility was latent and could not reasonably be discovered during a pregnancy examination. Warranties against latent defects that are not discoverable by the pre-contract examination are not excluded by terms of I.C. § 28–2–316(3)(b). *See* I.C. § 28–2–316 cmt. 8; James J. White and Robert S. Summers, UNIFORM COMMERCIAL CODE § 12–6, at 646 n. 25 (4th ed. 1995). Consequently,

Dr. McGaffey's pregnancy examination of Revelation Prophecy did not effectuate a waiver of the implied warranty of fitness for a particular purpose.

## D. Court's Finding That the Implied Warranty of Fitness Had Been Breached

Lange next argues that even if an implied warranty of fitness arose, the court erred in finding that the warranty was breached because the evidence was insufficient to show that Revelation Prophecy was unfit as a broodmare at the time of delivery.

When a trial court sits without a jury, it is the province of that court to weigh conflicting evidence, and its findings will not be set aside unless they are clearly erroneous. I.R.C.P. 52(a); *Abbott v. Nampa School District. No. 131,* 119 Idaho at 548, 808 P.2d at 1293; *McCandless v. Carpenter,* 123 Idaho 386, 390, 848 P.2d 444, 448 (Ct.App.1993). A trial court's findings will not be deemed clearly erroneous if they are supported by competent, substantial, though conflicting evidence. *Rueth v. State,* 103 Idaho at 77, 644 P.2d at 1336.

Lange correctly points out that to determine whether an implied warranty has been breached, one must examine whether the purchased goods complied with the warranty at the time of delivery. *Dickerson v. Mountain View Equipment Co.,* 109 Idaho 711, 716, 710 P.2d 621, 626 (Ct.App.1985). Therefore, we examine the evidence to determine whether it supports the district court's finding that Revelation Prophecy's susceptibility to uterine infections, which made her unsuitable for breeding purposes, existed at the time of her delivery to the Whitehouses. Evidence before the district court indicated that although the infection could be stopped between breeding attempts so that an examination would show a clear bacterial culture, subsequent breeding attempts would cause a recurrence of the infection. Dr. Richard Silvestor, a veterinarian who treated Revelation Prophecy after the Whitehouses' purchase, reviewed the mare's medical records from 1989. These records, he testified, indicated that Revelation Prophecy was bred in 1989 but had not conceived and that the

veterinarian examining her at that time detected an enlargement of the uterus, which could be a symptom of uterine infection. The evidence also showed that Revelation Prophecy had not produced a foal for the three years prior to her sale to the Whitehouses. Based upon the mare's medical records and history, Dr. Silvestor testified to the opinion that she had reproductive problems at the time of the purchase. This evidence was sufficient to support the trial court's finding that, at the time of delivery, the mare was susceptible to infection. Therefore we will uphold the trial court's findings.

### E. Mitigation of Damages

Lange's final contention is that the district court erred by omitting to make findings and conclusions on Lange's defense that the Whitehouses failed to mitigate their damages. He avers that the Whitehouses could have restored Revelation Prophecy's fertility, and thereby reduced their damages, by sending her to Washington State University or the University of Idaho for evaluation by specialists. Lange relies upon the doctrine of avoidable consequences, under which an aggrieved party may not recover for losses that could have been avoided by the use of reasonable means, including reasonable expenditures. *See Davis v. First Interstate Bank of Idaho, N.A.*, 115 Idaho 169, 170, 765 P.2d 680, 681 (1988). Defendants who invoke this doctrine bear the burden to prove that the plaintiff's damage could have been lessened. *Id.; Eliopulos v. Kondo Farms, Inc.*, 102 Idaho 915, 919, 643 P.2d 1085, 1089 (Ct. App.1982).

The district court here did not directly address this defense in its findings. When sitting as the trier of fact, it is the trial court's duty to prepare findings of fact and conclusions of law in support of the decision that it reaches. I.R.C.P. 52(a); *Pope v. Intermountain Gas Co.*, 103 Idaho 217, 225, 646 P.2d 988, 996 (1982). The purpose of this requirement is "to afford the appellate court a clear understanding of the basis of the trial court's decision, so that it might be determined whether the trial court applied the proper law to the appropriate facts in reaching its ultimate judgment in the case." *Id.*

However, the omission to make findings on a particular issue does not invariably require a remand to the trial court. Where the record is clear and yields an obvious answer to the relevant question, the absence of findings by the trial court may be disregarded. *Call v. Marler*, 89 Idaho 120, 123–24, 403 P.2d 588, 590 (1965); *Trautman v. Hill*, 116 Idaho 337, 338, 775 P.2d 651, 652 (Ct.App.1989). Thus, the question presented is whether the record in the present case leads to only one reasonable conclusion on the issue whether the Whitehouses failed to reasonably mitigate their damages.

Lange avers that a reasonable buyer in the position of the Whitehouses would have taken the mare to a reproductive center at the University of Idaho or would have had fertility testing conducted by the Washington State University College of Veterinary Medicine. However, at trial, he did not present evidence that such evaluation likely would have led to a cure for the mare's infertility, nor did he show the probable cost of such testing. Therefore, Lange did not satisfy his burden to prove that Revelation Prophecy could have been restored to fitness as a broodmare and the Whitehouses' damages thereby lessened. Because there is insufficient evidence to support a finding in favor of Lange on his allegation that the Whitehouses failed to mitigate damages, the absence of a finding by the trial court on this defense will be disregarded.

### III.

### CONCLUSION

The judgment of the trial court awarding damages for breach of the implied warranty of fitness for a particular purpose is affirmed. Consequently, we need not address the trial court's decision regarding the implied warranty of merchantability. As the prevailing parties, the respondents are entitled to attorney fees on appeal pursuant to I.C. § 12–120(3) and I.A.R. 41. Costs as well as attorney fees are awarded to respondents.

WALTERS, C.J., and PERRY, J., concur.