938 P.2d 189

**Fred QUINTO, Plaintiff–Appellant,**

v.

**MILLWOOD FOREST PRODUCTS, INC., Defendant–Respondent.**

No. 21778.

Court of Appeals of Idaho.

April 3, 1997.

Petition for Review Denied, June 19, 1997.

Malcolm S. Dymkoski, Coeur d'Alene, for plaintiff–appellant.

Jarold P. Cartwright, Coeur d'Alene, for defendant–respondent.

LANSING, Judge.

This is an action for alleged misdelivery of cedar lumber. The appeal is taken from an order of the district court granting a directed verdict to the defendant. We reverse.

## FACTS AND PROCEDURAL BACKGROUND

In September 1989, Appellant Fred Quinto acquired from Petersen Forest Products, LTD, (Petersen), two truck loads of rough cedar lumber. He arranged for Petersen to deliver the lumber to Respondent Millwood Forest Products, Inc. (Millwood), where it was to be milled into siding. After Millwood milled the cedar lumber to specifications provided by Quinto, at Quinto's instruction a portion of the wood was loaded onto trucks for delivery to Petersen and another portion was delivered to a customer of Quinto's. The remaining wood was milled a second time at Quinto's request in an attempt to enhance its quality and value. After this lumber had been remilled and Millwood had been paid, the wood remained in Millwood's yard. In January 1990, and again in March 1990, Millwood requested that Quinto remove the lumber. During March 1990, Quinto telephoned to inform Millwood that a Davis Transport Company truck would pick up the wood during the week of March 25. On Monday, March 25, a truck of Point to Point Trucking, Ltd. arrived at the yard, and the driver told Millwood employees that he was to pick up the Quinto lumber. This truck was sent not by Quinto but by Petersen, who was apparently engaged in a dispute with Quinto regarding the right to the lumber or its proceeds. The lumber was loaded onto the Point to Point truck by Millwood employees and was transported to Petersen. On Wednesday, March 27, when Quinto telephoned to tell Millwood that the Davis Transport truck would arrive that day, he learned that the lumber had been delivered to Petersen.

Quinto brought this suit against Millwood seeking damages for the value of the lumber released to Petersen. At the conclusion of the presentation of evidence at trial, the district court granted Millwood's motion for a directed verdict. In granting the motion, the court concluded that the storage of the

lumber on Millwood's premises after milling benefitted only Quinto and, therefore, constituted a gratuitous bailment. The court reasoned that, as a gratuitous bailee, Millwood could be liable only for gross negligence, and not for simple negligence, in caring for the lumber. Because the court found that the evidence would not support a finding of gross negligence on the part of Millwood, a directed verdict was granted in Millwood's favor. Quinto now appeals, contending that Millwood was a bailee for hire and was therefore liable for simple negligence in handling property entrusted to its custody, that a claim of breach of contract between Millwood and Quinto was raised in the pleadings or tried by consent of the parties and should have been presented to the jury, and that the district court improperly admitted hearsay evidence at trial.

## ANALYSIS

### A. Liability for Misdelivery of Bailed Goods

■■■ We consider first the trial court's order directing a verdict for Millwood on the basis that a gratuitous bailee is not liable for simple negligence. On a motion for a directed verdict pursuant to I.R.C.P. 50(a), the moving party necessarily admits the truth of the adverse evidence and every inference that may legitimately be drawn therefrom in the light most favorable to the opposing party. *Stephens v. Stearns*, 106 Idaho 249, 252–53, 678 P.2d 41, 44–45 (1984); *Jordan v. Hunter*, 124 Idaho 899, 904, 865 P.2d 990, 995 (Ct.App.1993). The moving party is entitled to a directed verdict only if the evidence yields but one conclusion as to the verdict that reasonable minds could reach. *Stephens, supra.* In reviewing the decision to grant a motion for a directed verdict, the appellate court applies the same standard utilized by the trial court. *Quick v. Crane*, 111 Idaho 759, 764, 727 P.2d 1187, 1192 (1986); *Stephens, supra.* Because the question whether a directed verdict is appropriate is an issue of law, we freely review the trial court's decision. *Id.*

The district court grappled with the issue of the standard of care applicable to Millwood in the circumstances presented here.

In initially granting Millwood's motion for a directed verdict, the court noted that Millwood's processing of the lumber was completed by October or November of 1989, and it was anticipated by the parties that the lumber would be retrieved by Quinto shortly after milling. The court found that there had been no agreement between the parties for storage of the lumber until March 1990, and that Millwood had neither charged nor received any fee for this storage. The court concluded that the storage of the lumber on Millwood's premises after the milling therefore constituted a gratuitous bailment. Relying upon the general rule that a gratuitous bailee is liable for loss or damage to bailed goods only if the injury was caused by the bailee's gross negligence, *see* Annotation, *Duty and Liability of Gratuitous Bailee or Mandatory*, 4 A.L.R. 1196 (1919), the court held that the evidence was insufficient to demonstrate gross negligence by Millwood, and therefore directed a verdict in Millwood's favor.

Quinto then moved for a new trial, alleging, *inter alia*, that the court had erred in holding that Millwood was a gratuitous bailee. Quinto asserted that a bailment for hire existed and that Millwood was therefore required to exercise ordinary care with respect to the bailed goods. Upon consideration of Quinto's motion, the district court revised its determination as to the law applicable to a gratuitous bailee and held that misdelivery of goods by a gratuitous bailee, however innocent, imposes absolute liability upon the bailee. The court relied upon numerous authorities for this proposition, including RESTATEMENT (SECOND) OF TORTS § 234 (1965); 8 AM.JUR.2d. *Bailments* § 181, at 911–12 (1980); 8 C.J.S. *Bailments* § 92, at 334 (1988); Samuel Williston, WILLISTON ON CONTRACTS (1936). Accordingly, the court ordered a new trial. Thereafter, both parties requested revision of the district court's decision, and the court ultimately reinstated the directed verdict in Millwood's favor. The court was persuaded that in Idaho, the rule of absolute liability for misdelivery of bailed goods was abrogated by *Loomis v. Imperial Motors Inc.*, 88 Idaho 74, 396 P.2d 467 (1964). The court

interpreted *Loomis* as holding that liability of a gratuitous bailee for misdelivery arises only upon a showing of gross negligence.

On appeal, Quinto again argues that Millwood was a bailee for hire. We, however, conclude that the characterization of the bailment as gratuitous or for hire is irrelevant to disposition of Quinto's claim and that the district court was correct in its second disposition of this case because a bailee is liable for unauthorized delivery regardless of the level of care that may have been exercised by the bailee.

■ A bailment is:

A delivery of goods or personal property, by one person to another, in trust for the execution of a special object upon or in relation to such goods, beneficial either to the bailor or bailee or both, and upon a contract, express or implied, to perform the trust and carry out such object, and thereupon either to redeliver the goods to the bailor or otherwise dispose of the same in conformity with the purpose of the trust.

*Id.* at 78, 396 P.2d at 469, quoting BLACK'S LAW DICTIONARY (4th ed.). A gratuitous bailment is a bailment for the sole benefit of the bailor. *Id.* A gratuitous bailee is liable for *damage to or loss of* the bailed item only if the bailee was grossly negligent. *Id.* at 79, 396 P.2d at 469–70. A bailee for hire, on the other hand is liable for simple negligence (the failure to use ordinary or reasonable care) which results in the *loss of or damage to* bailed property. *Low v. Park Price Co.,* 95 Idaho 91, 94, 503 P.2d 291, 294 (1972) (loss of furniture from house that was in the custody of a house mover); *Carson v. Bye,* 79 Idaho 495, 498, 321 P.2d 604, 605 (1958) (loss of transmission from a car in garage for repairs).

■ The nature of the bailment relationship is of little or no consequence, however, to the question of liability for *misdelivery* of bailed goods. The great weight of authorities hold that a delivery of bailed property by a bailee to one not authorized by the bailor to receive it is a conversion or a breach of the bailment contract for which the law imposes liability on the bailee irrespective of negligence. RESTATEMENT (SECOND) OF TORTS § 234; Walter H.E. Jaeger, WILLISTON ON CONTRACTS § 1038 (3d ed. 1967); W. Page Keeton et al., PROSSER AND KEETON ON THE LAW OF TORTS § 15, at 97 (5th ed. 1984). "This liability is the same whether the bailment is for the sole benefit of the bailor, the sole benefit of the bailee, or the mutual benefit of both." 8 Am.Jur.2d *Bailments* § 181, at 912.

For example, in *Rensch v. Riddle's Diamonds of Rapid City, Inc.,* 393 N.W.2d 269 (S.D.1986), two diamond rings were left with a jeweler to be cleaned, the cleaning having been advertised as free to the public. When the owner returned to pick up his rings, he learned that the jeweler's clerk had mistakenly given the rings to another customer. The rings were never recovered. The Supreme Court of South Dakota, relying on the general rule that even innocent misdelivery of bailed goods by a gratuitous bailee imposes absolute liability on the bailee, affirmed a summary judgment against the bailee on the issue of liability.

In *Fireman's Fund Ins. Co. v. Wagner Fur, Inc.,* 760 F.Supp. 1101 (S.D.N.Y.1991), a fur storage facility delivered, via UPS, the owner's furs to the wrong address, from which they subsequently vanished. The court reversed a summary judgment entered in the bailee's favor, citing the common law rule that "any of the usual types of bailee" who delivers bailed goods to the wrong person is liable to his bailor. *Id.* at 1105 & n. 10.

Similarly, in *Byer v. Canadian Bank of Commerce,* 8 Cal.2d 297, 65 P.2d 67 (1937), the court rejected an argument by the defendant bank that, being a gratuitous bailee of bonds deposited for safekeeping, it was liable only for gross negligence when an imposter secured the bonds by means of a forged telegram. The Supreme Court of California, held that misdelivery of bailed goods imposes liability upon the bailee even where the bailee acted innocently and by mistake. *See also Jacobson v. Richards & Hassen Enterprises,* 172 F.2d 464 (2d Cir.1949) (coat check concessionaire who misdelivered a coat to impostors was liable to the bailor even on the assumption that there existed only a gratuitous bailment); *Wabco Trade Co. v. S.S.*

*Inger Skou,* 482 F.Supp. 444, 448 (S.D.N.Y. 1979) (absence of benefit to bailee does not preclude liability for misdelivery); *S/M Industries, Inc. v. Hapag–Lloyd, A.G.,* 586 So.2d 876 (Ala.1991) (unauthorized delivery of furniture by warehouse was a conversion and "neither a sincere or apparently well-founded belief that the delivery to an unauthorized person was right nor the exercise of any degree of care constitutes a defense even to a gratuitous bailee."); *Harlan State Bank v. Banner Fork Coal Corp.,* 202 Ky. 639, 261 S.W. 16 (1924) (duty to return property to owner is absolute); *Baer v. Slater,* 261 Mass. 153, 158 N.E. 328 (1927) (delivery to unauthorized person gives rise to liability even if bailment is gratuitous); *Marlow v. Conway Iron Works,* 130 S.C. 256, 125 S.E. 569 (1924) (misdelivery of ginned cotton gives rise to liability irrespective of negligence); *Central Meat Market v. Longwell's Transfer, Inc.,* 62 S.W.2d 87 (Tex. Comm'n App.1933) (misdelivery of stored automobile renders bailee liable without regard to the question of due care or degree of negligence). *But see Maitlen v. Hazen,* 9 Wash.2d 113, 113 P.2d 1008 (1941) (applied gross negligence analysis in misdelivery case).

We do not believe that *Loomis v. Imperial Motors, Inc., supra,* adopts a principle in Idaho that differs from this nearly universal rule of liability for misdelivery of goods by a bailee. In *Loomis,* an automobile dealership sold a vehicle to a minor who, twenty days later, disaffirmed the contract and offered to return the vehicle. This offer was refused by the dealer. Shortly after his twenty-first birthday, the purchaser brought an action, apparently for recovery of the purchase price. The Supreme Court held that upon the purchaser's disaffirmance, the sale became void, so that the purchaser was entitled to restitution of the price paid. The Court next considered the dealer's claim that it was entitled to collect compensation for the reasonable rental value of the vehicle while it was in the purchaser's possession. The Court held that the dealer was not entitled to such compensation. In conducting its analysis, the Supreme Court characterized the purchaser as a bailee following his disaffirmance of the contract, and the Court commented that, "The liability of a gratuitous bailee or a bailee under a bailment for the sole benefit of the bailor is generally recognized as one arising for gross negligence." *Loomis,* 88 Idaho at 79, 396 P.2d at 469–70. This statement in *Loomis* is dicta inasmuch as there was no claim against the purchaser for negligence. Indeed, the Supreme Court seemed to acknowledge that the above comment was dicta when it stated in the next paragraph of the opinion: "The ultimate question in this case does not depend upon the loss of the bailed goods or upon any injury arising from the bailment. The ultimate question arises out of a claim for compensation by the bailor for the use of the goods bailed...." *Id.* Moreover, the Supreme Court also recognized that the rule that a gratuitous bailee is liable only for gross negligence has reference "only in situations of damage to the bailed goods or loss of those goods while operating within the limits of the bailment." *Id.*

Hence, *Loomis* does not establish a rule in Idaho governing liability of a bailee for misdelivery of goods. We reach this conclusion both because the language in *Loomis* addressing the liability of a gratuitous bailee is dicta and because, even if taken at face value, it applies only to liability for damage to or loss of goods, not to misdelivery.

In the absence of controlling Idaho authority, we deem it appropriate to follow the widely-accepted rule that bailees, whether gratuitous or not, will be liable for delivery of bailed goods to an unauthorized person. Consequently, we hold that the directed verdict against Quinto was erroneously granted and that a new trial is necessary.

**B. Adequacy of the Complaint to State a Breach of Contract Claim**

In the course of granting the directed verdict in favor of Millwood, the district court indicated that a breach of contract claim was neither sufficiently pleaded in Quinto's complaint, nor proved by the evidence. For guidance on remand, we will address the adequacy of Quinto's pleading, but in light of the necessity for a new trial, we do not address the sufficiency of the evidence.

"Modern pleading as reflected by I.R.C.P. 8(a)(1) requires only a simple, concise and direct statement fairly apprising the defendants of claims and grounds upon which the claims rest." *Myers v. A.O. Smith Harvestore Products, Inc.*, 114 Idaho 432, 439, 757 P.2d 695, 702 (Ct.App.1988). *See also Whitehouse v. Lange*, 128 Idaho 129, 133, 910 P.2d 801, 805 (Ct.App.1996). There is no requirement that a complaint include a statement of the various legal theories upon which the plaintiff relies. *Bauer v. Minidoka School Dist. No. 331*, 116 Idaho 586, 589, 778 P.2d 336, 339 (1989); *Collord v. Cooley*, 92 Idaho 789, 793, 451 P.2d 535, 539 (1969). The purpose of a complaint is to inform the defendant of the material facts upon which the plaintiff rests the action. *Clark v. Olsen*, 110 Idaho 323, 325, 715 P.2d 993, 995 (1986); *Whitehouse*, 128 Idaho at 133, 910 P.2d at 805.

We conclude that Quinto's complaint is sufficient to state a claim for breach of contract. The complaint alleges that Quinto delivered rough lumber to Millwood with instructions that Millwood was to process the lumber into siding, that Millwood did process the wood as directed by Quinto, that Quinto paid Millwood "the agreed price," that Quinto instructed Millwood to load the lumber onto a Davis Transport Company truck and that, notwithstanding these instructions, Millwood loaded the siding onto a truck of Point to Point Trucking, with the consequence that the siding has been lost to Quinto. Millwood did not move for a more definite statement of the claim prior to trial, as was its option under I.R.C.P. 12(e), and there is no indication that Millwood complained that it lacked sufficient notice that Quinto was pursuing a breach of contract claim. In our view, the allegations of Quinto's complaint fairly apprise Millwood of a cause of action for breach of contract.

## C. Admission of Hearsay under Rule 804(b)(3)

Quinto also contests the admissibility of certain evidence that was allowed at trial. Because the issue may emerge again at a new trial on remand, we will address this evidentiary question.

The trial court admitted, over Quinto's objection, two documents ostensibly prepared by Petersen. The first was a copy of a purchase order dated January 24, 1990, indicating that Petersen was purchasing 17,000 board feet of lumber from Quinto. This copy, which was sent to Millwood by Petersen, was received by Millwood on the day after the lumber was delivered to Petersen. The second document was a letter dated April 11, 1990, from Petersen's president, Hubert Petersen, to Millwood stating that Quinto had authorized Petersen to sell the lumber in January, and that Petersen was following this instruction and had credited Quinto's account for the lumber at a price above market value. No representative of Petersen testified at the trial. The trial court admitted the documents under I.R.E. 804(b)(3), the hearsay exception for statements against the declarant's pecuniary or proprietary interest.

Hearsay evidence is not admissible except as provided by the Idaho Rules of Evidence or other court rules. I.R.E. 802. The foundation for this general rule of hearsay exclusion is the principle that testimonial assertions should be subjected to the test of cross-examination. *Isaacson v. Obendorf*, 99 Idaho 304, 309, 581 P.2d 350, 355 (1978). The trial court has discretion to admit or exclude hearsay under the many exceptions to the general rule that hearsay is inadmissible. *Dep't. of Health and Welfare v. Altman*, 122 Idaho 1004, 1007, 842 P.2d 683, 686 (1992); *Cheney v. Palos Verdes Inv. Corp.*, 104 Idaho 897, 900, 665 P.2d 661, 664 (1983).

The hearsay exception under which the Petersen purchase order and letter were admitted provides in relevant part:

. . . .

The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

. . . .

(3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject declarant to civil or criminal liability, or to render invalid a claim by declar-

ant against another, that a reasonable man in declarant's position would not have made the statement unless declarant believed it to be true.

I.R.E. 804(b)(3). The rationale of this exception is that "a man will not make a damaging statement against himself unless it is true." Report of Idaho State Bar Evidence Committee, C 804, at 21 (Supp. Dec. 31, 1984) (hereinafter Evidence Committee Report). "Under the theory that people do not lightly make statements that are damaging to their interests, [this] requirement provides the safeguard of special trustworthiness justifying most of the exceptions to the hearsay rule." Kenneth S. Broun et al., McCORMICK ON EVIDENCE § 316, at 335, 336 (4th ed. 1992).

Rule 804(b)(3) requires that the statement be so decidedly against the declarant's interest "that a reasonable man in declarant's position would not have made the statement unless declarant believed it to be true." Even if the statement seems to be against the declarant's interest in some respect, if it appears that the declarant had some motive of self-interest when the statement was made which was likely to lead to misrepresentation of the facts, the statement should be excluded. *Id.*, § 319 at 348. As the Evidence Committee Report explains,

> Another aspect of the "reasonable man" test is whether the declarant believed the statement was against his interest. If not, the rationale for the exception fails. Weinstein points out 'it is not the fact that the declaration is against interest but the awareness of the fact by the declarant which gives the statement significance.'...

Evidence Committee Report, *supra,* citing 4 J. Weinstein & M. Berger, WEINSTEIN'S EVIDENCE § 804(b)(3)[02], at 97 (Supp. 1983).

■ In admitting the letter and purchase order at issue here, the trial court concluded that they were statements against Petersen's interest because their assertion that Petersen had agreed to pay Quinto above market price for the lumber, and had credited Quinto's account for such price, obligated Petersen to credit Quinto's account as indicated and would subject Petersen to liability if it

subsequently asserted a contrary position. We conclude, however, that in the circumstances presented here, the statements in the documents were not clearly against Petersen's interest and, to the contrary, were likely self-serving and may have been designed to enhance Petersen's position in any subsequent litigation with Quinto or Millwood over the unauthorized lumber delivery. Both documents were received by Millwood after the processed lumber had been delivered to Petersen. The thrust of these communiques was that the wood had been properly reclaimed by Petersen per an earlier agreement with Quinto and that Petersen had properly credited Quinto's account with the amount due. A reasonable person in the position of Hubert Petersen might well believe that it was in his interest to assert to Millwood in writing a post-hoc justification for taking possession of the lumber. At the time these statements were communicated to Millwood, Hubert Petersen may not have considered them to be against his interest but instead intended that they would enhance Petersen's position in any controversy with Millwood or Quinto over entitlement to the lumber. Under the circumstances presented here, the statements were as likely to be self-serving as they were to be against the author's pecuniary interest. Consequently, the statements lack the indicia of trustworthiness on which the Rule 804(b)(3) hearsay exception is based. We hold that Rule 804(b)(3) was not applicable to the Petersen purchase order and letter. We do not, of course, offer any opinion as to the admissibility of this evidence under any other hearsay exception that might be invoked in the retrial of this action.

## ATTORNEY FEES

Quinto requests an award of attorney fees incurred on appeal pursuant to I.C. § 12-120(3). That statute provides that the prevailing party will be entitled to reasonable attorney fees incurred in a civil action arising from a commercial transaction. Because we are remanding the case for a new trial, it has not yet been determined whether Quinto will be the ultimate prevailing party in this litigation. Therefore, we do not award attorney

fees but hold that attorney fees incurred for this appeal may be taken into account by the trial court in determining the amount of fees which ultimately should be awarded to the prevailing party at the conclusion of the litigation.

## CONCLUSION

The district court's order granting a directed verdict to respondent Millwood Forest Products, Inc., is reversed and this case is remanded to the district court for further proceedings consistent with this opinion. Costs are awarded to appellant pursuant to I.A.R. 40.

WALTERS, C.J., and PERRY, J., concur.